**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

FINDTHEBEST.COM, INC.;

           Plaintiff,

v.

LUMEN VIEW TECHNOLOGY LLC;
DALTON SENTRY, LLC;
DECISIONSORTER, LLC; THE
HILLCREST GROUP, INC.; EILEEN C.
SHAPIRO; STEVEN J. MINTZ; and DOES 1
through 50,

           Defendants.

No. _____

ECF CASE

DEFENDANT'S MEMORANDUM OF
LAW IN SUPPORT OF MOTION TO
DISMISS

<u>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT**</u>
<u>**LUMEN VIEW TECHNOLOGY LLC'S MOTION TO DISMISS**</u>

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... i

INTRODUCTION ............................................................................................................... 1

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT ...................................................................................................................... 4

I.      LEGAL STANDARD ............................................................................................ 5

II.    PLAINTIFF'S ALLEGATIONS OF RICO VIOLATIONS ARE WHOLLY
INSUFFICIENT TO DEFEAT A MOTION TO DISMISS .................................... 6

    A.    The § 1962 (c) RICO claim must be dismissed because FTB has failed to allege
fraud with particularity under Federal Rule of Civil Procedure 9(b) ..................... 6

    B.    The RICO Claims must be dismissed because FTB has failed to allege a pattern
of racketeering necessary to support any RICO cause of action ........................... 10

    C.    The § 1962 (c) RICO claim should be dismissed because FTB has failed to allege
injury as the result of investment of racketeering income .................................... 17

    D.    The § 1962 (d) RICO Claim must be dismissed because FTB has failed to allege
any actionable RICO violation or facts to demonstrate a conspiracy .................... 19

III.   UNDER THE LITIGATION PRIVILEGE AND RULE 408, STATEMENTS BY
DEFENDANT'S ATTORNEY CANNOT BE USED TO PROVE THE VALIDITY OF
PLAINTIFF'S CLAIM ...................................................................................... 20

IV.   THE STATE LAW CLAIMS SHOULD ALSO BE DISMISSED ....................... 22

CONCLUSION ................................................................................................................ 24

## <u>TABLE OF AUTHORITIES</u>

**<u>Federal Cases</u>**

Activision TV, Inc. v. Pinnacle Bancorp, Inc., 2013 U.S. Dist. LEXIS 140805 (D. Neb. Sept. 30, 2013)……………………………………………………………………...16

Allen v. New World Coffee, Inc., 2001 U.S. Dist. LEXIS 3269 (S.D.N.Y. 2001)…..…14, 18, 24

Ashcroft v. Iqbal, 556 U.S. 662 (2009)……………………………………………………5

Bechik Prods., Inc. v. Flexible Prods., Inc., 225 F.2d 603 (2d Cir. N.Y. 1955)……………….....12

Bletas v. Deluca, 2011 U.S. Dist. LEXIS 133132 (S.D.N.Y. 2011)…………………………21, 22

B.V. Optische Industrie De Oude Delft v. Hologic, Inc., 909 F. Supp. 162 (S.D.N.Y. 1995)…..11

Capasso v. Cigna Ins. Co., 765 F. Supp. 839 (S.D.N.Y. 1991)……………………………...17, 18

Cohen v. S.A.C. Trading Corp., 711 F.3d 353 (2d Cir. 2013)……………………………………5

Conopco, Inc. v. Wein, 2007 U.S. Dist. LEXIS 27339 (S.D.N.Y. 2007)……………….…………20

Ganoe v. Lummis, 662 F. Supp. 718 (S.D.N.Y. 1987)…………………………………………..22

GICC Capital Corp. v. Tech. Fin. Group, Inc., 67 F.3d 463 (2d Cir. 1995)…………..…..……..13

First Capital Asset Mgmt. v. Satinwood, Inc., 385 F.3d 159 (2d Cir. 2004)………...6, 7, 8, 13, 19

Foman v. Davis, 371 U.S. 178 (1962)…………………………………………………………...24

Formilien v. Beau Dietl & Assocs., 2012 U.S. Dist. LEXIS 86523 (S.D.N.Y. 2012)…...……23

Jennings v. Auto Meter Prods., 495 F.3d 466 (7th Cir. Ind. 2007)……………….……………5

Katzman v. Victoria's Secret Catalogue, 167 F.R.D. 649 (S.D.N.Y. 1996)..………………….11

Lakonia Mgmt. Ltd. v. Meriwether, 106 F. Supp. 2d 540 (S.D.N.Y. 2000)…………………...6, 7

Leveraged Leasing Admin. Corp. v. PacifiCorp Capital, Inc., 87 F.3d 44 (2d Cir. 1996)..……...23

Lou v. Belzberg, 728. F. Supp. 1010 (S.D.N.Y. 1990)……………………………………………9

Motorola Solutions, Inc. v. In re Innovatio IP Ventures, LLC (In re Innovatio IP Ventures, LLC Patent Litig.), 921 F. Supp. 2d 903 (N.D. Ill. 2013)………...…..5, 6, 15, 16, 17

Nightingale Group, LLC v. Cw Capital Mgmt., 2012 U.S. Dist. LEXIS 93197 (S.D.N.Y. 2012)……………………………………………………………….…………13

Officemax Inc. v. Cinotti, 2013 U.S. Dist. LEXIS 61689 (E.D.N.Y. 2013)……………….……20

Ouaknine v. MacFarlane, 897 F.2d 75 (2d Cir. 1990)……………………………...…………….17

Peterson v. City of New York, 2012 U.S. Dist. LEXIS 2658 (S.D.N.Y. 2012)……..……….6, 19

Procapui-Productores de Camaroes de Icapui Ltda. v. Marcial Gerald Layani,

G.F. Higgins, Inc., 2008 U.S. Dist. LEXIS 121633 (S.D.N.Y. 2008)………..………..7, 9, 11

Rayo v. Vitale, 2011 U.S. Dist. LEXIS 128234 (E.D.N.Y. 2011)………………………………22

S. Leo Harmonay, Inc. v. Binks Mfg. Co., 597 F. Supp. 1014 (S.D.N.Y. 1984)…………..……20

Schuh v. Druckman & Sinel, L.L.P., 2008 U.S. Dist. LEXIS 15079 (S.D.N.Y. 2008)….11, 18, 24

Shirokov v. Dunlap, Grubb & Weaver PLLC, 2012 U.S. Dist. LEXIS 42787 (D. Mass. 2012)………………………………………………………………………………………………25, 18

Singh v. HSBC Bank USA, 200 F. Supp. 2d 338 (S.D.N.Y. 2002)………………..…… …21, 24

Sosa v. DIRECTV, Inc., 437 F.3d 923, 942 (9th Cir. Cal. 2006)………………………...…..12

Spool v. World Child Intern. Adoption Agency, 520 F.3d 178, 183 (2d Cir. 2008)……………10

Stochastic Decisions, Inc. v. DiDomenico, 995 F.2d 1158 (2d Cir. N.Y. 1993)…..……………18

Virtue v. Creamery Package Mfg. Co., 227 U.S. 8 (U.S. 1913)………………………………12

Viva Optique, Inc. v. Contour Optik, Inc., 2007 U.S. Dist. LEXIS 91421 (S.D.N.Y. 2007)……11

Watkins v. Smith, 2012 U.S. Dist. LEXIS 165762 (S.D.N.Y. 2012) ……………………….……………….………………………5, 10, 12, 13, 14, 15, 17, 19, 22

**Rule and Statutes**

California Business & Professional Code § 17200………………………………….……………1

18 U.S.C. §§ 1341, 1343………………………………………………………..………6

18 U.S.C. § 1962 (c), (d)……………………………………………………1, 6, 19, 20

Hobbs Act, 18 U.S.C. § 1951………………………………………………….…………6

Fed. R. Evid. 408………………………………………………………………………20, 21

Fed. R. Civ. Pro. 8……………………………………………………………….……....2

Fed. R. Civ. Pro. 9(b)……………………………………………………………...…8

Fed. R. Civ. Pro. 11…………………………………………………………………2, 9, 16

Fed. R. Civ. Pro. 12(b)(6)……………………………………………………1, 4, 5, 8, 25

Fed. R. Civ. Pro. 15……………………………………………………….…………24

28. U.S.C. § 1367………………………………………………………………22, 23

28. U.S.C. §§ 1331, 1332…………………………………………………………...…23

## INTRODUCTION

Defendant LUMEN VIEW TECHNOLOGY LLC ("Lumen View"), by and through its attorneys, respectfully submits this memorandum of law in support of its Motion to Dismiss Findthebest.com, Inc.'s Complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.

## PRELIMINARY STATEMENT

On or about September 16, 2013, Plaintiff Findthebest.com, Inc. ("FTB") initiated action against Lumen View, Dalton Sentry, LLC ("Dalton"), Decisionsorter, LLC ("Decisionsorter"), The Hillcrest Group, Inc. ("Hillcrest"), Eileen C. Shapiro ("Shapiro"), Steven J. Mintz ("Mintz") and Does 1 through 50 ("Does") (collectively, "Defendants") for racketeering under the Racketeering Influenced Corruption Act ("RICO"), extortion, abuse of process, civil conspiracy and violation of the California Business & Professional Code § 17200.  Count One alleges a violation of 18 U.S.C. § 1962 (c) and Count Two alleges a violation of 18 U.S.C. § 1962 (d) (the "RICO Claims").  Pl.'s Compl. ¶¶ 91-94, 95-98.

As alleged in FTB's Complaint, the basis for its action arises out of the following limited facts[1]:

    (i)       Over a 16 month period, 19 patent infringement lawsuits were filed by Lumen View involving United States Patent No. 8,069,073 (the "'073 Patent");

---

[1] No officer or employee of FTB, nor FTB's counsel, Mr. Joseph Leventhal, included a sworn affidavit attesting to the facts plead in the FTB Complaint (which is an unverified complaint).  Additionally, while not required by this Court, FTB did not include a RICO Case Management Statement with the filing of its Complaint.

(ii)       Defendants Shapiro and Mintz are co-inventors of the '073 Patent (the "Co-Inventors");

(iii)     A post-litigation letter was sent on May 30, 2013 by counsel for Lumen View to FTB informing it of the filing of a patent infringement lawsuit against it; and

(iv)     There were limited, Fed. R. Evid. 408 protected, and litigation privileged communications made by counsel for Lumen View to FTB, including offers of compromise.

The '073 Patent is the subject of separate litigation pending in this district, <u>see</u> 1:13-cv-03599-DLC, in an action brought by Lumen View in connection with FTB's unlicensed use of subject matter covered by the '073 Patent (the "Companion Case").

At the core of FTB's RICO suit is the allegation that Lumen View acted in bad faith and filed a frivolous infringement suit against FTB without first conducting the necessary due diligence and infringement analysis.  To properly assert its position on the merits, FTB could have challenged Lumen View's allegations of infringement within the four corners of the Companion Case.  For instance, FTB could have challenged that Lumen View did not meet the necessary pleading standards in its complaint set by Rule 8 and Form 18 of the Federal Rules of Civil Procedure.  FTB could have also challenged Lumen View's complaint on the basis that it was not filed in good faith in violation of Rule 11 of the Federal Rules of Civil Procedure.

Instead, FTB chose to file a RICO complaint against Defendants apparently to create a far greater media sensation[2] than simply challenging the infringement allegation on the merits -

---

[2] <u>IAM Magazine</u>, "<u>Savvy Start-up Exploits Troll Hysteria To Generate Publicity Worth Millions</u>", September 19, 2013, (…"***by using RICO as his hook O'Connor has very cleverly exploited current troll hysteria in the media to***

all with the direct purpose of gaining an unfair litigation advantage in the Companion Case.[3] Simultaneously, in connection with the filing of this present action, Mr. O'Connor:

(i)     Commenced a media campaign designed to attract free attention to his company <u>by disclosing only incomplete facts and rhetorical commentary,</u>

(ii)    Made good on his earlier verbal and written threats to the Co-Inventors to retaliate for the Companion Case and publicly embarrass and shame them,[4]

(iii)   Positioned himself as an "opponent" of software patents <u>when he himself is an inventor of multiple software patents</u>; and

(iv)   Repeatedly publicized his disapproval of the enforcement of software patents against companies <u>when he did it himself is this very venue a few short years ago</u>.

Further, Mr. O'Connor, acting on behalf of FTB, publicly stated that he was taking this position as a matter of "<u>principal</u>." Lumen View argues, however, that Mr. O'Connor's campaign (and, by extension, FTB's RICO suit) are most assuredly hypocritical and self-serving considering Mr. O'Connor's past history:

(i)     Mr. O'Connor is listed as an inventor of multiple software patents related to online advertising (the "O'Connor Software Patents"),[5]

---

generate millions of dollars' worth of free publicity for FindTheBest, and who knows how many extra clicks and sales.") (Emphasis added).  <u>See</u> Ex. 1

[3] <u>See</u> Ex. 2, Letter from Counsel Joseph S. Leventhal of the Leventhal Law Firm to Hon. Judge James L. Cott, Docket. Item 36 of the Companion Case, 1:13-cv-03599-DLC. "*Specifically, FindTheBest.com, Inc. believes that any settlement of [the RICO suit] necessitates settlement of the related [Companion Case]...*" (Emphasis added).

[4] Illustrative of Mr. O'Connor's extreme and unprofessional conduct is his sending of an email to the Executive Director of the Catholic Schools Foundation, *calling into the question the ethics of Ms. Shapiro, who is a volunteer and trustee of the Catholic Schools Foundation*.  <u>See</u> Ex. 3.

[5] The O'Connor Software Patents include the following: U.S. No. 5,948,061 (issued 1999), U.S. No. 7,039,599 (issued 2006), U.S. No, 7,827,062 (issued 2010), U.S. No. 7,844,488 (issued 2010) and U.S. No. 7,930,207 (issued 2011).

     (ii)      It appears that while Mr. O'Connor was CEO, DoubleClick, Inc. sought enforcement of one of the O'Connor Software Patents against online advertising competitors in this very Court.[6]

The gravamen of Mr. O'Connor's media and political campaign, and the FTB Rico suit, also ironically appear founded upon criticism of the United States patent system as a whole.[7] Additionally, despite himself being an inventor and enforcer of software patents, Mr. O'Connor believes that the Co-Inventors should be publicly "outed" and shamed for any alleged involvement in the enforcement of the '073 Patent.

The facts set forth by FTB in its Complaint fall far short of those in other patent-related RICO actions with facts more favorable to plaintiffs, but where Courts still determined that the pleading standard of RICO was simply not met.  In light of the facts above and applicable legal precedents, Lumen View submits that FTB's Complaint is nothing more than a continuation of Mr. O'Connor's media and political campaign to gain an unfair litigation advantage for FTB in the Companion Case.  As such, dismissal under Fed. R. Civ. Pro. 12(b)(6) is appropriate.

## ARGUMENT

---

[6] See 1:00-CV-02690-DLC (SDNY) and 1:99-CV-11781-DLC (SDNY). See, also, Ex. 4, "Filed Nov. 12 in U.S. District Court in Norfolk, Va., DoubleClick's claim cites a Sept. 7, 1999, patent for the 'method of delivery, targeting, and measuring advertising over networks' as grounds for the suit. It seeks lost profits and triple any damages the court determines.  A DoubleClick representative confirmed the legal action but refused to comment on the case. ***DoubleClick CEO Kevin O'Connor did not return phone calls***." "... ***It's probably more of a PR thing," said Kent Allen, a research analyst at Aberdeen Group, Boston, about the lawsuit***." (Emphasis added.)  Adweek, "DoubleClick Sues Pair Over Patent Issue," January 10, 2000.

[7] Despite the O'Connor Software Patents being issued during the relevant timeframe, Mr. O'Connor recently stated that "***The mess started in the mid 90's when an over-eager patent office started granting patents to every vague business process under the sun***." (Emphasis added).  PandoDaily, "How to Slaughter A Patent Troll in 5 Steps," July 26, 2013.  (Kevin O'Connor is the author of this article).  See Ex. 5.

Mr. O'Connor also recently quoted "***[t]he patent office has been issuing garbage patents for the past 15 years***." (Emphasis added).  VentureBeat, "FindTheBest Sues Patent Trolls Under Anti-Mafia RICO Act," September 17, 2013.  (VentureBeat and FTB are business partners.)  See Ex. 6.

## I.    LEGAL STANDARD

When analyzing a motion to dismiss under Federal Rule 12(b)(6), the court accepts all allegations in the complaint as true and draw all inferences in the non-moving party's favor. Cohen v. S.A.C. Trading Corp., 711 F.3d 353 (2d Cir. 2013).   A complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face.   Id.; see also Watkins v. Smith, 2012 U.S. Dist. LEXIS 165762, *6 (S.D.N.Y. 2012) (Cote, J.).   Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, are not entitled to an assumption of truth.   Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Peterson v. City of New York, 2012 U.S. Dist. LEXIS 2658, *5 (S.D.N.Y. 2012) (Cote, J.) (granting motion to dismiss).

FTB has utterly failed to plead sufficient facts to support a plausible claim of racketeering, as alleged in Counts One and Two of its Complaint.   FTB's Complaint is baseless, unsupported by the allegations contained within, relies upon privileged and protected material, pursued in bad faith against Defendants, and generally does not fit within the framework or policy of a RICO claim.[8]   Defendants respectfully request this Court to dismiss the RICO Claims for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), and further requests the Court decline to extend supplemental jurisdiction over the remaining state law claims.

---

[8] Attempts to apply RICO to cases involving patent law is a relatively new development.  However, numerous courts have dismissed RICO claims made in this type of context, considering the requirements of the heightened pleading standard for fraud.  See, e.g., Motorola Solutions, Inc. v. In re Innovatio IP Ventures, LLC, 921 F. Supp. 2d 903, 919 (N.D. Ill. 2013) ("[F]ederal authority makes clear that it is not improper for a patent owner to advise possible infringers of its belief that a particular product may infringe the patent. The general allegations that [pre-suit] communications with other Targets contained similar misstatements are also insufficient, as they lack the specificity necessary under Rule 9(b)."); Jennings v. Auto Meter Prods., 495 F.3d 466 (7th Cir. Ind. 2007) (dismissing RICO claims in patent context for failure to show predicate acts and continuity); Shirokov v. Dunlap, Grubb & Weaver PLLC, 2012 U.S. Dist. LEXIS 42787 (D. Mass. 2012) (finding that Plaintiff, who alleged pattern of sending out settlement letters for infringement, failed to state a claim under RICO).

## II.     PLAINTIFF'S ALLEGATIONS OF RICO VIOLATIONS ARE WHOLLY INSUFFICIENT TO DEFEAT A MOTION TO DISMISS

To state a cause of action under RICO § 1962 (c) as alleged in Count One, the FTB must allege: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. Peterson, 2012 U.S. Dist. LEXIS 2658 at *5.  To state a cause of action under RICO § 1962(d) as alleged in Count Two, the FTB "must allege a conspiracy to commit a substantive RICO violation pursuant to 18 U.S.C. § 1962(a), (b), or (c)." Id.  Without sufficient allegations in Count One, Count Two also fails.

### A.    The § 1962 (c) RICO claim must be dismissed because FTB has failed to allege fraud with particularity under Federal Rule of Civil Procedure 9(b)

In Count One of the Complaint, the FTB alleges that Defendants committed violations of RICO through fraudulent acts.  Pl.'s Compl. ¶ 78 (Hobbs Act, 18 U.S.C. § 1951 and California State Penal Law §§ 518, 519, 524); ¶90 (citing Mail Fraud, 18 U.S.C. § 1341 and Wire Fraud, 18 U.S.C. § 1343).   Because the Complaint sounds in fraud, it is subject to the heightened particularity requirement of Rule 9(b).  First Capital Asset Mgmt. v. Satinwood, Inc., 385 F.3d 159, 178-79 (2d Cir. 2004); see also Lakonia Mgmt. Ltd. v. Meriwether, 106 F. Supp. 2d 540, 543 (S.D.N.Y. 2000) (granting motion to dismiss RICO claims for failing to meet this standard). FTB is required to show particular details of fraud, as well as facts that give rise to a "strong inference" of fraudulent intent.  First Capital Asset Mgmt., 385 F.3d at 179 (finding the Complaint insufficient to satisfy the heightened fraud pleading standard); Motorola Solutions, Inc., 921 F. Supp. 2d at 915 (dismissing RICO claims against patent holder for failure to identify "the specific who, what, when, where, and how of the material misrepresentation or omission.").

To satisfy this pleading requirement, FTB's Complaint must "specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiffs contend the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." Lakonia Mgmt., Ltd, 106 F. Supp. 2d at 553 (citations omitted). All matters within the FTB's knowledge may be pled on information and belief, however, "this does not mean that those matters may be plead lacking any details at all." First Capital Asset Mgmt., 385 F.3d at 179. A Complaint that makes numerous conclusory accusations, without providing the supporting details and specificity required under the heightened pleading standard, results in a failed pleading that must be dismissed. Lakonia Mgmt., Ltd, 106 F. Supp. 2d at 554.

Previous courts in this District have found the heightened particularity requirement to have "special urgency in civil RICO actions, due to the intrinsically vague nature of RICO claims and the significant fairness interest in ensuring defendants adequate notice of the charges brought against them." Procapui-Productores de Camaroes de Icapui Ltda. v. Marcial Gerald Layani, G.F. Higgins, Inc., 2008 U.S. Dist. LEXIS 121633, *10 (S.D.N.Y. 2008) (citations omitted). In light of this special urgency, and in analyzing FTB's complete lack of detail and specificity in its allegations, the pleading requirements in this case have clearly not been satisfied and that the Motion to Dismiss should be granted.

1. *Heightened Pleading Requirements Are Not Met*

The fraudulent acts alleged by FTB in support of the RICO Claims are as follows: all Defendants, collectively, have associated together for the "common purpose of extorting money" out of FTB and others based upon false, objectively unreasonable and baseless claims of patent infringement.  Pl.'s Compl. ¶¶ 1, 5, 20-24, 34-35, 37, 72-90.  FTB also further alleges Defendants, collectively, know their "targets" are not infringing upon the '073 Patent and have

not done proper due diligence.  Id. at ¶ 3.  FTB claims Defendants, collectively, have acted in a fraudulent manner because they have "no good faith belief" that FTB or other entities are infringing on the '073 Patent, and make "hollow, false and misleading threats."  Id. at ¶ 37. These conclusory allegations are repeated throughout the Complaint, perhaps in the hope that its repetition might substitute for the "who, what, when, and where" requirements of Rule 9(b).

FTB has failed to allege appropriate details of fraud or fraudulent intent.  Stating that Defendants, collectively, acted in bad faith is a conclusory allegations that is not entitled to an assumption of truth under the standard of 12(b)(6).  There are no specific details for each Defendant, showing how, when and why they acted in a fraudulent manner, or showing evidence of fraudulent intent.  Sending a letter related to a valid legal claim is not fraudulent.  In fact, the letter in question which was sent to FTB was delivered *after* the Complaint was filed, included a copy of the Complaint and informed FTB of its obligations regarding filing a response and preservation of evidence. Similarly, filing a Complaint related to a valid legal claim is not fraudulent.  Being part of an entity that does not operate in a manner that FTB feels is appropriate, without more, is not fraudulent.  When courts are faced with a Complaint that makes broad, sweeping allegations, while failing to explain either the how or why of the fraud, they routinely find that the heightened pleading standard has not been met.  First Capital Asset Mgmt., 385 F.3d at 179-80 (finding allegations of motive alone do not suffice without specific facts).

Not only are there no facts to show that Defendants acted in bad faith or in a fraudulent manner, but in fact the opposite is true. FTB makes repeated and thread-bare accusations that Defendants' filed frivolous lawsuits against FTB and others and further failed to properly investigate infringement of the '073 Patent.  To date, no party against whom Lumen View has

asserted the '073 Patent has filed a motion against Lumen View for violation of Rule 11 of the Federal Rules of Civil Procedure, which would be the appropriate remedy for a party facing an alleged frivolous lawsuit.  Moreover, in response to FTB's accusation in the Companion Case that Lumen View's Preliminary Infringement Contentions (PICs) were deficient and were evidence that Defendants' failure to properly conduct an investigation of infringement, Your Honor has since ruled that Lumen View's PICs were sufficient.[9]  In further reliance on its PICs, (i) Lumen View filed a 73 page Joint Disputed Claim Terms Chart with this Court on September 27, 2013 [Docket Item 26] and (ii) Lumen View recently filed its Opening Claim Construction Brief with this Court on October 11, 2013. [Docket Item 28].

2.  *Allegations Are Not Broken Down As to Each Defendant As Required*

In addition, where multiple defendants are named in the alleged fraud, the fraud must be particularized as to each defendant.  Lou v. Belzberg, 728. F. Supp. 1010, 1022 (S.D.N.Y. 1990). It is necessary to particularize and prove each defendant's participation in the fraud and each defendant's enactment of the two necessary predicate acts required under RICO.  Procapui-Productores de Camaroes de Icapui Ltda., 2008 U.S. Dist. LEXIS 121633 at *10.   FTB's Complaint is also insufficient in this respect: it does not break down specific allegations of fraud or fraudulent intent as to each Defendant, instead grouping conclusory allegations together against all Defendants.

For example, Count One of the Complaint states: "Defendants, individually or collectively, conducted the affairs of the Enterprise through numerous acts of extortion, attempted extortion and conspiracy to commit extortion…"  Pl.'s Compl. ¶ 78.  Count One refers

---

[9] It should be noted that FTB has objected to Lumen View's discovery requests to receive technical information and materials regarding FTB's systems and software and has not provided any such information as of the date of this Motion.

to "Defendants" as a collective unit fourteen times, without once breaking down specific allegations as to each Defendant.  Pl.'s Compl. ¶¶ 79-91; <u>see also</u> Pl.'s Compl., Count Two, ¶¶ 96-97.  The "Factual Basis" Section of the Complaint also fails to break down allegations as to each specific Defendant.  <u>See, e.g.</u>, Pl.'s Compl. ¶ 48 ("Defendants use the discovery process, not to investigate and prove their patent infringement claims, but to merely harass, intimidate, injure and annoy FTB….").[10] The named Defendants in this case include two individuals, as well as four entities, and potential unknown individuals.  FTB is required to particularize and prove each Defendant's participation in the fraud, each Defendant's enactment of the two necessary predicate acts required under RICO, and each Defendant's fraudulent intent.  Based on FTB's failure to satisfy this requirement, and others, the Motion to Dismiss must be granted.

**B.  <u>The RICO Claims must be dismissed because FTB has failed to allege a pattern of racketeering necessary to support any RICO cause of action</u>**

FTB must prove that Defendants committed at least two predicate acts of racketeering activity, constituting a pattern, to show a RICO violation. The predicate acts must have occurred within ten years of each other, be related, and either amount to or pose a threat of continuing criminal activity.  <u>Watkins v. Smith</u>, 2012 U.S. Dist. LEXIS 165762, *10 (S.D.N.Y. 2012) (Cote, J.), <u>citing</u> <u>Spool v. World Child Intern. Adoption Agency</u>, 520 F.3d 178, 183 (2d Cir. 2008) (quotations omitted).  In addition to failing to satisfy a heightened pleading standard, as discussed above, the Complaint does not even allege sufficient facts to show a pattern under the RICO Claims under basic pleading requirements.

---

[10] Pl.'s Compl. ¶¶ 36, 37, 38, 48, 49, 52, 64, 65, 67, 69 (describing actions of "Defendants" collectively);

**1.  *The Complaint Fails to Show Two Or More Predicate Acts***

Where mail fraud and wire fraud are alleged, as in this case, the allegations of predicate acts must show that each Defendant engaged in a scheme to defraud to get money or property, furthered by the use of interstate mail or wires.  In addition, the Complaint must prove that each Defendant "knowingly participated in the scheme and that the misrepresentations were material." Procapui-Productores de Camaroes de Icapui Ltda., 2008 U.S. Dist. LEXIS 121633 at *8-9 (citations omitted) (granting motion to dismiss for failing to satisfy this standard);[11] Schuh v. Druckman & Sinel, L.L.P., 2008 U.S. Dist. LEXIS 15079, *29-31 (S.D.N.Y. 2008); B.V. Optische Industrie De Oude Delft v. Hologic, Inc., 909 F. Supp. 162, 170 (S.D.N.Y. 1995).

FTB relies on the collective Defendants': (1) "act" of (a) sending a single post-litigation letter through the mail, (b) informing FTB of its patent infringement and that a lawsuit had been filed, and (c) making an offer to amicably resolve the unlicensed use of the '073 Patent; (2) the filing of a "frivolous" lawsuit; and (3) certain discussions between counsel.  Basically, these acts describe the behavior "normally expected of patent holders.[12]  FTB alleges Defendants repeatedly conduct this act as to numerous targets, improperly extorting licensing fees, but do not specify which Defendants do this, their intent, when, or how this activity is even fraudulent.

This Court and others have determined that sending a pre-litigation letter in an effort to a settle a valid legal claim does not qualify as a "predicate act" under RICO.  Katzman v.

---

[11]  Again, as stated infra in Section II.B, these allegations of predicate acts must be pled with particularity as to each defendant.  FTB has failed to meet this heightened requirement, and has failed to meet the basic requirement of showing two or more predicate acts.

[12] In a case where the Amended Complaint asserted that Defendants owned a patent and sought to enforce it, the courts noted that "such behavior is normally expected of patent holders…." Viva Optique, Inc. v. Contour Optik, Inc., 2007 U.S. Dist. LEXIS 91421, *6-7 (S.D.N.Y. 2007) (citations omitted).  Furthermore, additional generalized allegations that Defendants" subjectively believed that their patents were actually invalid or not infringed" without more is insufficient to sustain a plausible claim that Defendants' suits are objectively meritless or part of a fraudulent scheme.  Id.

Victoria's Secret Catalogue, 167 F.R.D. 649, 656 (S.D.N.Y. 1996); see also Sosa v. DIRECTV, Inc., 437 F.3d 923, 942 (9th Cir. Cal. 2006) (dismissing RICO claims based on multiple demand letters sent out regarding a valid legal claim).  The act of sending a post-litigation letter to FTB (or others) related to a properly filed lawsuit is certainly not fraudulent, nor is it a predicate act. Virtue v. Creamery Package Mfg. Co., 227 U.S. 8 (U.S. 1913).[13]  In addition, FTB has not plead any facts showing why the filing of the Companion Case was a fraudulent predicate act.  No evidence supports FTB's conclusion that the Companion Case was frivolous and would qualify as a predicate act under RICO, especially in light of the recent denial of FTB's Motion to have Lumen Views PICs stricken or amended.

In its Complaint, FTB set forth facts that fall short of an analogous case (with facts more favorable to the RICO plaintiff) where the court nevertheless found no pattern of racketeering activity.  Watkins v. Smith, 2012 U.S. Dist. LEXIS 165762 (S.D.N.Y. 2012).  In Watkins, the plaintiff argued that he satisfied the requirement of pleading at least two predicate acts "because he has alleged that the defendants targeted 'approximately 50 to 100 targets each month.'"  Id. at *14.  The Court held:

> Bald assertions do not serve to give a defendant fair notice of a claim…. Allegations that the attorney-defendants made 'extortion[ate] demands" of other targets or 'commit[ed] extortion . . . upon approximately 50 to 100 targets each month" are conclusions of law and need not be accepted as true. In sum, the amended complaint is so bare of factual allegations of a second instance of extortion -- or of any other predicate act -- that it fails to plausibly allege a pattern of racketeering activity.

---

[13] "Patents would be of little value if infringers of them could not be notified of the consequences of infringement or proceeded against in the courts. Such action considered by itself cannot be said to be illegal."  Virtue v. Creamery Package Mfg. Co., 227 U.S. 8 (U.S. 1913); see also Bechik Prods., Inc. v. Flexible Prods., Inc., 225 F.2d 603 (2d Cir. N.Y. 1955) ("Patents would be of little value if the infringers of them could not be notified of the consequences of infringement.").

Id. at *14-15.  Here, all FTB has set forth are facts showing 19 cases were filed by Lumen View over a 16 month period and a single post-litigation letter was sent to FTB.  This conduct falls far short of conduct in other cases that themselves fell short of sufficiently pleading an adequate cause of action.

Bald assertions, grouping all Defendants together and made "on information and belief" do not serve to give fair notice of a claim or establish predicate acts.  Allegations that Defendants made demands of other targets are "conclusions of law and need not be accepted as true."  This type of Complaint is insufficient to allege numerous predicate acts, constituting a pattern of racketeering activity, such that would defeat a Motion to Dismiss.  As in Watkins, this Court should likewise find that the instant Complaint fails in its allegations.

### 2.  *The Complaint Fails to Allege Continuity*

A RICO action must allege "either an open-ended pattern of racketeering activity (i.e., past criminal conduct coupled with a threat of future criminal conduct) or a closed-ended pattern of racketeering activity (i.e., past criminal conduct extending over a substantial period of time)." First Capital Asset Mgmt., 385 F.3d at 180, citing GICC Capital Corp. v. Tech. Fin. Group, Inc., 67 F.3d 463, 466 (2d Cir. 1995).  FTB has failed to plead either closed-ended or open-ended continuity.  "A closed-ended pattern of racketeering activity involves predicate acts 'extending over a substantial period of time.'"  First Capital Asset Mgmt., 385 F.3d at 181.  This Circuit has interpreted this period of time to be, at a minimum, two years.  Id.[14]

---

[14] For a discussion of the substantial time requirement, see generally Nightingale Group, LLC v. Cw Capital Mgmt., 2012 U.S. Dist. LEXIS 93197, *26 (S.D.N.Y. 2012) ("at least two years must be shown to establish a close-ended pattern").

The first instance of allegedly fraudulent activity in the Complaint is March 2012, when "Defendants" filed their first lawsuit, 16 months ago. Pl.'s Compl. ¶ 33. This period of time fails to satisfy the substantial period of closed ended pattern.

FTB also failed to sufficiently plead open-ended continuity. Such continuity is only present when a threat of continuing criminal activity exists beyond the period during which the predicate acts were performed. Watkins, 2012 U.S. Dist. LEXIS 165762 at *10 (citations omitted). In assessing whether a plaintiff has shown open-ended continuity, the nature of the RICO enterprise and of the predicate acts are analyzed. Open ended continuity is satisfied if an "inherently unlawful" act is performed through the enterprise (i.e. murder) whose business is racketeering activity, there is a threat of continued criminal activity. Allen v. New World Coffee, Inc., 2001 U.S. Dist. LEXIS 3269, *20-21 (S.D.N.Y. 2001).

If the business is not engaged in inherently unlawful acts, as is the case here, there must be some evidence from which it may be inferred that the predicate acts were the regular way of operating that business, or that the nature of the predicate acts themselves implies a threat of continued criminal activity. Id. at *21. Conclusory allegations that the conduct of Defendants applies to others, or that the conduct is Defendants' regular way of doing business, are insufficient. Id. For example, a "bare assertion that 'the defendants all operated an association in fact to commit extortion, as a regular way of doing business, upon approximately 50 to 100 targets each month' does not plausibly allege that open-ended continuity exists." Watkins, 2012 U.S. Dist. LEXIS 165762 at *16.

The formation of limited liability companies is not an inherently unlawful act. Enforcement of validly-granted patent rights through litigation is not an inherently unlawful act. To satisfy open ended continuity, FTB was required to show either: (1) predicate acts were the

regular way of operating the business, or (2) that the nature of the predicate acts themselves implies a threat of continued criminal activity.  FTB has failed to show the existence of any fraudulent predicate acts: the bare assertion that Defendants engage in a pattern of extortion as their regular business does not plausibly allege open ended continuity.  Id.

### 3.  *Defendants Are Protected From Plaintiff's Allegations of RICO Under the Noerr-Pennington Doctrine*

Although this issue has not been resolved in the Second Circuit, other jurisdictions have addressed the concept of RICO claims brought against a patent holder enforcing their rights under the "Noerr-Pennington" doctrine.  See, e.g., Motorola Solutions, Inc. v. In re Innovatio IP Ventures, LLC (In re Innovatio IP Ventures, LLC Patent Litig.), 921 F. Supp. 2d 903 (N.D. Ill. 2013) (granting motion to dismiss RICO claims).  This doctrine, originally derived from the First Amendment right to petition the government, has been expanded into other contexts, including antitrust, labor disputes, patent litigation, and RICO claims.  Id. at 910-11 (noting the expansion of the doctrine into other contexts and jurisdictions).  It protects the patent holder's right to petition the court to stop infringement.  According to the Innovatio holding, Noerr-Pennington applies to pre-suit demand letters in the patent litigation context and bars a party from bringing litigation unless the demand was so baseless that "no reasonable litigant could realistically expect to secure favorable relief."  Id. at 914.

To clarify at the outset, the instant litigation and the Companion Case differ from the facts of In Re Innovatio in numerous respects.  That case involved pre-litigation letters sent to enforce patent rights, which the court pointed out was "a necessary component of enforcing patent rights."  Id. at 911.  In concluding that the doctrine may apply to pre-litigation communications (such as Innovatio's campaign to enforce its patent rights) the Court then

15

addressed whether the "Sham Litigation" exception was applicable.  "The Federal Circuit has clearly stated that Noerr-Pennington does not apply to petitioning activity that. . . is a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor."  Id. at 914.  Although in Innovatio the plaintiff argued that the demand letters, sent to numerous targets, included fraudulent misrepresentations, the allegations did not satisfy the heightened fraud pleading standards.  Id. at 915.  Ultimately, the Court found that the efforts to enforce the patent rights in a pre-suit context were not a sham, and dismissed the RICO, conspiracy and unfair competition claims.  Id. at 922 ("Accordingly, Innovatio's campaign is protected petitioning activity under the First Amendment and Noerr-Pennington); see also Activision TV, Inc. v. Pinnacle Bancorp, Inc., 2013 U.S. Dist. LEXIS 140805 (D. Neb. Sept. 30, 2013) (holding that Noerr-Pennington applied to patent litigation absent bad faith).

Applying this doctrine in the post-litigation context, the Innovatio holding suggests that Defendants efforts to enforce their patent rights are protected unless the Sham Exception applies. FTB's Complaint in this Action lacks any allegations that would support a finding of bad faith, such that the Exception would apply.  FTB has merely alleged that Defendants behaved the way that a normal patent holder is expected: taking action to enforce validly-issued patent rights.  As stated, no party against whom Lumen View has asserted the '073 Patent (including FTB) has filed a motion against Lumen View for violation of Rule 11 of the Federal Rules of Civil Procedure.  Moreover, in response to FTB's accusation in the Companion Case that Lumen View's Preliminary Infringement Contentions (PICs) were deficient and were evidence that Defendants' failure to properly conduct an investigation of infringement, Judge Cote has since ruled that Lumen View's PICs were sufficient.

Similar to the <u>Innovatio</u> Plaintiff, FTB has not alleged bad faith with the appropriate particularity, and Noerr-Pennington provides another basis for this Court to grant Defendants Motion to Dismiss. Under this doctrine, the acts that Plaintiff has alleged in his Complaint that form the basis of predicate acts and continuity are protected by the First Amendment and Noerr-Pennington. These protected acts cannot be used as the foundation for a RICO claim, and Plaintiff's Complaint must be dismissed.

**C. The § 1962 (c) RICO claim should be dismissed because FTB has failed to allege injury as the result of investment of racketeering income**

To satisfy the injury requirement under RICO, FTB must allege that its business or property suffered a clear and definite injury **by reason of** Defendants' investment of racketeering income in the racketeering enterprise. <u>Ouaknine v. MacFarlane</u>, 897 F.2d 75, 82-83 (2d Cir. 1990) (emphasis added) (dismissing RICO claim for failure to allege injury sufficiently); <u>Watkins</u>, 2012 U.S. Dist. LEXIS 165762 at *11 (stating that plaintiff failed to allege clear and definite injury by reason of the RICO violation and granting defendants motion to dismiss); <u>Capasso v. Cigna Ins. Co.</u>, 765 F. Supp. 839, 842 (S.D.N.Y. 1991) (pointing out that "attorneys' fees and costs of investigation incurred as a result of defendants' allegedly illegal acts do not qualify as RICO injuries"). Additionally, a RICO cause of action does not accrue until the amount of damages becomes clear and definite. <u>Watkins</u>, 2012 U.S. Dist. LEXIS 165762 at *17. The Complaint fails to show a clear and definite injury that was sustained by reason of Defendants alleged RICO violations, and this provides the Court another basis for dismissal of this Complaint.

FTB initially alleges that it "sustained injury to its business and property, including, but not limited to, damage to its business reputation, disruption of its business affairs, and expenses

incurred investigating and defending [the instant] claim." Pl.'s Compl. ¶ 69. Later in the Complaint, the FTB again alleges that the Defendants' conduct caused harm to include "legal fees, disruption to [FTB's] business, injury to FTB and its CEO's reputation and disruption of FTB's defense to Lumen's patent infringement complaint." Pl.'s Compl. ¶ 82; see also Pl.'s Compl. ¶¶ 87, 89, 91, 97. This allegation is particularly odd given the significant amount of time and resources Mr. O'Connor and FTB have collectively spent promoting their involvement in the Companion Case and this Action.

The Second Circuit has repeatedly held that attorneys' fees are not a sufficiently alleged RICO injury. Capasso, 765 F. Supp. at 842 (holding attorneys' fees not injury under RICO, unless it was proved that Defendants intent was to make FTB incur the attorneys' fees); accord Stochastic Decisions, Inc. v. DiDomenico, 995 F.2d 1158, 1167 (2d Cir. N.Y. 1993); see also Shirokov v. Dunlap, Grubb & Weaver PLLC, 2012 U.S. Dist. LEXIS 42787, *85 (D. Mass. 2012) (holding attorneys' fees not injury under RICO). Once again, FTB's bare allegation that Defendants intended FTB to "face legal fees" does not prove that Defendants intent was to force FTB to incur those fees. P.'s Compl. ¶ 80. Attorneys' fees do not sufficiently show injury for RICO purposes.

As to the other alleged damages, nowhere in the Complaint does FTB allege the type of injury required for a successful RICO claim. There are no factual allegations to indicate that the FTB's injury was "**the result of the investment of racketeering income** as opposed to the alleged predicate fraudulent acts." Allen, 2001 U.S. Dist. LEXIS 3269 at *9 (emphasis added). In fact, these "injuries" came about despite FTB's "consistent assertions that the statements made by Defendants on these points were in fact false." Schuh v. Druckman & Sinel, L.L.P., 2008 U.S. Dist. LEXIS 15079, *33-34 (S.D.N.Y. 2008) (finding no injury under RICO where the

allegations of injury did not arise from FTB's reliance on the fraudulent acts or statements by Defendants).

The damages alleged here are uncertain and indefinite, and not tied to any investment of alleged racketeering income by any Defendant.  Ironically, despite Mr. O'Connor having previously directed the filing of multiple software patent infringement actions in connection with one of the O'Connor Software Patents, FTB and its CEO allege that that their reputations have been damaged as a result of Lumen View bringing a patent infringement action against FTB.  If FTB and its CEO were concerned about their reputation, it would be expected that FTB and Mr. O'Connor would not have been proactive in their efforts to draw free and heightened media attention to the Companion Case and this Action, including through posting information and updates on Mr. O'Connor's personal Twitter account.[15]  See Ex. 7.  FTB's Complaint and the allegations of damages under RICO are wholly insufficient to support a RICO claim against Defendants, and the Motion to Dismiss must be granted.

**D.  The § 1962 (d) RICO Claim must be dismissed because FTB has failed to allege any actionable RICO violation or facts to demonstrate a conspiracy**

RICO Section § 1962 (d) makes it unlawful for any person to conspire to violate the earlier provisions of the section.  18 U.S.C. § 1962 (d).  Therefore, if a plaintiff fails to state a claim pursuant to 18 U.S.C. §§ 1962 (a), (b) or (c), a claim under 18 U.S.C. § 1962 (d) must fail. Watkins, 2012 U.S. Dist. LEXIS 165762 at *9, *17; citing First Capital Asset Mgmt., Inc., 385 F.3d 182; Peterson, 2012 U.S. Dist. LEXIS 2658 at *10 (dismissing § 1962 (d) claim).

---

[15] It is worth noting that Mr. O'Connor utilized his Twitter account to personally tout and proclaims his responsibility for filing the FTB RICO Complaint (September 16, 2013) and publicize his (now current) support for abolishing software patents (September 4, 2013).

Because the FTB's Complaint fails to state a claim for a RICO violation under § 1962 (c) in Count One, as discussed above, the Complaint therefore fails as to a violation of § 1962 (d) in Count Two.  Lumen View respectfully requests this Court to dismiss these Counts for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

### III.  UNDER THE LITIGATION PRIVILEGE AND RULE 408, STATEMENTS BY DEFENDANT'S ATTORNEY CANNOT BE USED TO PROVE THE VALIDITY OF PLAINTIFF'S CLAIM

Under Federal Rule of Evidence 408, evidence of "Compromise Offers and Negotiations" is prohibited from use in a Complaint to prove the validity of a claim.  This includes conduct or statements made during compromise negotiations.  Fed. R. Evid. 408; S. Leo Harmonay, Inc. v. Binks Mfg. Co., 597 F. Supp. 1014 (S.D.N.Y. 1984).  A letter, indicating the writer's intent was to "send the letter in the course of compromise negotiations" falls within the privilege and should not be used as the basis for allegations in a Complaint.  Id.  The Rule furthers the strong federal policy favoring settlement of disputes.  Conopco, Inc. v. Wein, 2007 U.S. Dist. LEXIS 27339 (S.D.N.Y. 2007) (citations omitted).

Furthermore, the litigation privilege provides that "[s]tatements made by parties, attorneys, and witnesses in the course of a judicial or quasi-judicial proceeding are absolutely privileged, notwithstanding the motive with which they are made, so long as they are material and pertinent to the issue to be resolved in the proceeding." Officemax Inc. v. Cinotti, 2013 U.S. Dist. LEXIS 61689, *12 (E.D.N.Y. 2013) (citations omitted) (holding that a letter sent by an attorney regarding a violation of settlement agreement was absolutely privileged).  This privilege is absolute and applies not only to statements made in pleadings and in court, but also to statements made in letters between attorneys and parties and during offers of settlement by attorneys.  Id.  Under New York law, such statements cannot form the basis of allegations in the

FTB's Complaint.  Id. at *13-14; Bletas v. Deluca, 2011 U.S. Dist. LEXIS 133132, *30 (S.D.N.Y. 2011) ("The litigation privilege is extremely broad, encompassing 'anything that may possibly or plausibly be relevant or pertinent, with the barest rationality, divorced from any palpable or pragmatic degree of probability.'"); Singh v. HSBC Bank USA, 200 F. Supp. 2d 338, 339-340 (S.D.N.Y. 2002).  This litigation privilege **applies regardless of the speaker's motive**, including bad faith or malice.  Id. at 340; Bletas, 2011 U.S. Dist. LEXIS at *30 (emphasis added).  Because Lumen View's letter was sent after the litigation Companion Case was commenced and concerned the facts of the Companion Case, the contents of that letter are *absolutely privileged*.

FTB's Complaint, including the allegations of RICO and the accompanying state law claims, relies on statements made by counsel for Lumen View to the FTB for the purpose of resolution of the patent dispute.  See, e.g., Pl.'s Compl. ¶¶ 42-49 (describing the post-litigation letter sent on May 30, 2013 in which Lumen View attempted to open settlement discussions related to the patent); ¶ 57 (describing conversations between attorney for Lumen View and FTB regarding the settlement letter); ¶¶ 66-68 (noting Lumen View's efforts to persuade FTB to settle).  Indeed, counsel for FTB indicated an interest in engaging in settlement discussions, and led counsel for Defendant Lumen View to believe that such negotiations were in fact taking place.

These statements, relied upon in the FTB's Complaint, fall under Rule 408 and the litigation privilege.  Statements protected by Rule 408 and/or the litigation privilege cannot be used to prove the validity of a cause of action against Defendants in the Complaint.  The statements were made by an attorney and were pertinent to actual litigation involving his client and in an effort to bring that litigation to an amicable resolution.  Even if the Court were to

assume as true that the Lumen View's counsel made statements in bad faith[16], the privilege applies regardless of the speaker's motive.  <u>Bletas</u>, 2011 U.S. Dist. LEXIS 133132 at *30.  Consequently, the statements were protected under the Rule and the privilege, and cannot be used to prove the validity of FTB's claim against Defendants.  Taking out this protected information from the allegations, the Complaint is wholly unsupported, and FTB's claims against Defendants must be dismissed.

## IV.  THE STATE LAW CLAIMS SHOULD ALSO BE DISMISSED

The party invoking the jurisdiction of the federal courts bears the burden of establishing that right.  <u>Ganoe v. Lummis</u>, 662 F. Supp. 718, 723 (S.D.N.Y. 1987).  FTB claims that the Court has subject matter jurisdiction over the RICO Claims (Counts 1 and 2) based on diversity of citizenship and federal question jurisdiction.  Pl.'s Compl. ¶ 26.  FTB further claims that the Court has supplemental jurisdiction over the remaining state law claims.  <u>Id</u>.[17]  Once again, FTB's deficient pleading is evident, as neither federal question nor diversity jurisdiction are present.  Lumen View therefore respectfully requests the Court in its discretion to decline to exercise supplemental jurisdiction and dismiss the remaining state law claims in Counts 3-6.

"The Second Circuit has repeatedly advised that 'if a plaintiff's federal claims are dismissed before trial, the state law claims should be dismissed as well.'"  <u>Watkins</u>, 2012 U.S. Dist. LEXIS 165762 at *20; <u>Rayo v. Vitale</u>, 2011 U.S. Dist. LEXIS 128234, *14 (E.D.N.Y. Sept. 23, 2011). ("if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.").  For the reasons discussed

---

[16] An allegation that Lumen View's counsel vehemently denies and has provided a sworn affidavit to that effect (<u>See</u> Ex. 8)

[17] The statute relied upon by FTB states: "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution…." 28. U.S.C. § 1367.

above, federal question jurisdiction is not present because FTB has failed to sufficiently allege violations of RICO, a federal statute: the heightened pleading standard was not met, there were no predicate acts or continuity to establish a pattern of racketeering, and there was no injury. The failed RICO claims should not provide a jurisdictional basis to hear the state law claims.

FTB has also not pled the appropriate facts to satisfy diversity jurisdiction.  Diversity of citizenship "should be distinctly and positively averred in the pleadings."  Leveraged Leasing Admin. Corp. v. PacifiCorp Capital, Inc., 87 F.3d 44, 47 (2d Cir. 1996).  The complaint fails to set forth an amount in controversy.  It fails to set forth the citizenship of all Defendants, but only mentions the residence of the individual defendants; an omission that "would suffice to defeat federal jurisdiction under 28.  U.S.C. § 1332.  Id. ("It is also clear that a statement of the parties' residence is insufficient to establish their citizenship.").  It fails to set forth the citizenship of each and every member of each defendant LLC, which would be used to establish the citizenship of the LLC.  Formilien v. Beau Dietl & Assocs., 2012 U.S. Dist. LEXIS 86523, *56 (S.D.N.Y. 2012) (declining to extend supplemental jurisdiction where pleading failed to affirmatively show complete diversity of all individual and entity defendants).  These numerous defects, and others, defeat diversity jurisdiction.

Pursuant to the supplemental jurisdiction statute cited by FTB, the Court may decline to extend supplemental jurisdiction over claims where the Court has dismissed all claims where it has original jurisdiction.  28 U.S.C. § 1367(c).  Without jurisdiction over RICO claims under federal question, or diversity jurisdiction, the Court should decline to exercise supplemental jurisdiction over Counts 3-6 and grant Lumen View's Motion to Dismiss as to all counts.

23

## **CONCLUSION**

When considering RICO claims, courts have attempted to achieve results consistent with Congress goal in passing this legislation: protecting legitimate businesses from infiltration by organized crime.  <u>Allen</u>, 2001 U.S. Dist. LEXIS 3269 at *8; <u>Schuh v. Druckman & Sinel, L.L.P.</u>, 2008 U.S. Dist. LEXIS 15079 (S.D.N.Y. 2008) (noting the importance of distinguishing RICO violations from traditional state court actions, cast in terms of RICO violations to gain access to treble damages and attorneys' fees in federal court).  As FTB is aware, the mere assertion of a RICO claim has an "inevitable stigmatizing effect on those named as defendants," and courts strive to flush out frivolous RICO allegations at an early stage of the litigation.  <u>Allen</u>, 2001 U.S. Dist. LEXIS 3269 at *8.  By granting Lumen View's Motion to Dismiss, this Court would achieve that result: flushing out a frivolous, unsupported RICO claim at an early stage and protecting Defendants from detrimental effects of FTB's publicity stunt.  There are numerous grounds for the Court to find that FTB has not met its pleading burden, and Lumen View urges this Court to grant the Motion to Dismiss.

Furthermore, FTB should not be given the opportunity to amend this pleading under Federal Rule of Civil Procedure 15.  Granting a party leave to amend under this rule is inappropriate where a party has acted in bad faith, or where incurable defects are present.  <u>Allen</u>, 2001 U.S. Dist. LEXIS 3269 at *33-34 <u>citing Foman v. Davis</u>, 371 U.S. 178 (1962) (stating that undue delay, bad faith, dilatory motive, or futility of amendment may preclude an amendment); <u>Singh v. HSBC Bank USA</u>, 200 F. Supp. 2d 338, 340 (S.D.N.Y. 2002) ("such leave is not required if there are defects in a plaintiff's complaint that are incurable").

For the foregoing reasons, Lumen View respectfully requests that the Court: (1) grant its Motion to Dismiss Counts One and Two of the FTB's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted; (2) grant its Motion to Dismiss Counts Three – Six, and (3) to grant any other such relief as this Court deems just and proper.

October 28, 2013

STAMOULIS & WEINBLATT LLC

Stamatios Stamoulis #4606
stamoulis@swdelaw.com
Richard C. Weinblatt #5080
weinblatt@swdelaw.com
Two Fox Point Centre
6 Denny Road, Suite 307
Wilmington, DE 19809
Telephone:  (302) 999-1540

Attorney for Defendant
Lumen View Technology LLC