**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

FINDTHEBEST.COM, INC.,

                              Plaintiff,

                -against-

LUMEN VIEW TECHNOLOGY LLC, *et al.*,

                              Defendants.

13 Civ. 6521 (DLC)

ECF CASE

**MEMORANDUM OF DEFENDANTS DECISIONSORTER, LLC, THE HILLCREST**
**GROUP, INC., EILEEN C. SHAPIRO AND STEVEN J. MINTZ**
**IN SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT**

DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
Tel.: 212-909-6000

Attorneys for DecisionSorter, LLC, The Hillcrest
Group, Inc., Eileen C. Shapiro and Steven J. Mintz

December 23, 2013

<h1 style="text-align:center">TABLE OF CONTENTS</h1>

TABLE OF AUTHORITIES ............................................................................................. ii

PRELIMINARY STATEMENT ....................................................................................... 1

PROCEDURAL HISTORY .............................................................................................. 3

ARGUMENT .................................................................................................................... 5

I.      DISMISSAL IS REQUIRED UNDER RULE 12(B)(6) UNLESS THE
        COMPLAINT STATES A PLAUSIBLE CLAIM FOR RELIEF. ................................. 5

II.     FTB'S SUIT IS BARRED BY THE *NOERR-PENNINGTON*
        DOCTRINE ................................................................................................................. 6

        A.      Lumen View's Filing of Lawsuits to Enforce the '073 Patent Was
                Constitutionally Protected Activity Unless They Were Sham
                Lawsuits ............................................................................................................ 7

        B.      FTB's Amended Complaint Fails to Adequately Allege that Lumen
                View Has Engaged in Sham Litigation. ........................................................... 10

                1.      The amended complaint does not plausibly allege that
                        Lumen View filed objectively baseless lawsuits .................................... 10

                2.      The amended complaint does not plausibly allege that
                        Lumen View failed to conduct a pre-suit investigation ......................... 13

III.    FTB FAILS TO STATE A CLAIM FOR RELIEF UNDER RICO, 18
        U.S.C. §§ 1961 *ET SEQ.* ......................................................................................... 17

        A.      The Allegations of Extortion Fail as Predicate Acts Because the
                Filing of Litigation Is Not Extortion. ............................................................. 18

        B.      The Allegations of Mail and Wire Fraud Fail as Predicate Acts. ................... 20

                1.      The allegations of mail and wire fraud fail as predicate acts
                        because FTB does not allege reliance ..................................................... 20

                2.      Litigation conduct cannot support claims of mail fraud and
                        wire fraud. .............................................................................................. 22

IV.     THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL
        JURISDICTION OVER FTB'S STATE LAW CLAIMS. ........................................... 23

CONCLUSION ................................................................................................................ 24

i

Table of Authorities

Cases                                                                                                      Page(s)

*800 Adept, Inc. v. Murex Sec., Ltd.,*
539 F.3d 1354 (Fed. Cir. 2008) ........................................................................................7, 8

*Abbvie Inc. v. Mathilda and Terence Kennedy Institute of Rheumatology,*
2013 WL 3853149 (S.D.N.Y. June 20, 2013) ...........................................................11

*Abercrombie v. Andrew College,*
438 F. Supp. 2d 243 (S.D.N.Y. 2006)..........................................................................6

*Advanced Cardiovascular Systems, Inc. v. Medtronic, Inc.,*
265 F.3d 1294 (Fed. Cir. 2001) ...........................................................................11, 13

*Ashcroft v. Iqbal,*
556 U.S. 662, 678 (2009) ..............................................................................................5

*Aventis Pharmaceuticals Inc. v. Amino Chemicals Ltd.,*
715 F. 3d 1363 (Fed. Cir. 2013) .................................................................................11

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007).......................................................................................................5

*Bldg. Indus. Fund v. Local Union No. 3,*
992 F. Supp. 162 (E.D.N.Y. 1996) .............................................................................18

*Bridge v. Phoenix Bond & Indem. Co.,*
553 U.S. 639 (2008)....................................................................................................21

*Calabrese v. CSC Holdings, Inc.,*
2009 WL 425879 (E.D.N.Y. Feb. 19, 2009) ........................................................18, 21

*Carnegie–Mellon Univ. v. Cohill,*
484 U.S. 343 (1988)....................................................................................................23

*Chambers v. Time Warner; Inc.,*
 282 F.3d 147 (2d Cir.2002) .........................................................................................6

*Cintas Corp. v. Unite Here,*
601 F. Supp. 2d 571 (S.D.N.Y. 2009)........................................................................17

*Curtis & Associates, P.C. v. Law Offices of David M. Bushman, Esq.,*
758 F. Supp. 2d 153 (E.D.N.Y. 2010)........................................................................22

*Daddona v. Gaudio,*
156 F. Supp. 2d 153 (D. Conn. 2000) ........................................................................22

*DirectTV, Inc. v. Lewis*,
2005 WL 1006030 (W.D.N.Y. Apr. 29, 2005)............................................................18

*Dominant Semiconductors Sdn. Bhd. v. Osram GmbH*,
524 F.3d 1254 (Fed. Cir. 2008) .............................................................................8

*Elektra Entm't Grp., Inc. v. Santangelo*,
2008 WL 4452393 (S.D.N.Y. Oct. 1, 2008)..........................................................18

*Famosa Corp. v. Gaiam, Inc.*,
2012 WL 865687 (S.D.N.Y. Mar. 14, 2012)..........................................................12

*G-I Holdings, Inc. v. Baron & Budd*,
179 F. Supp. 2d 233 (S.D.N.Y. 2001)....................................................................18

*Global Network Commc'ns, Inc. v. City of New York*,
458 F.3d 150 (2d Cir. 2006) ...................................................................................6

*Globetrotter Software, Inc. v. Elan Computer Grp., Inc.*,
362 F.3d 1367 (Fed. Cir. 2004) .............................................................................7

*GMA Cover Corp. v. SAAB Barracuda LLC*,
2012 WL 642739 (E.D. Mich. Feb. 8, 2012)......................................................7, 8

*GP Indus., Inc. v. Eran Indus., Inc.*,
500 F.3d 1369 (Fed. Cir. 2007) .............................................................................8

*Harris v. Mills*,
572 F.3d 66 (2d Cir. 2009) .....................................................................................6

*Hollander v. Flash Dancers Topless Club*,
340 F. Supp. 2d 453 (S.D.N.Y. 2004)............................................................... 23-24

*In re Bill of Lading Transmission and Processing Sys. Patent Litig.*,
681 F.3d 1323 (Fed. Cir. 2012) ...........................................................................15

*In re Enron Corp.*,
379 B.R. 425 (S.D.N.Y. 2007) ...............................................................................6

*In re Indep. Serv. Orgs. Antitrust Litig.*,
203 F.3d 1322 (Fed. Cir. 2000) .........................................................................7, 8

*In re Innovatio IP Ventures, LLC Patent Litig.*,
921 F. Supp. 2d 903 (N.D. Ill. 2013) ..................................................................7, 9

*JS Prods., Inc. v. Kabo Tool Co.*,
2012 WL 607446 (D. Nev. Feb. 24, 2012).............................................................8

*Kramer v. Time Warner, Inc.*,
937 F.2d 767 (2d Cir. 1991) ....................................................................................6

*Masco Corp. v. United States*,
303 F.3d 1316 (Fed. Cir. 2002) .............................................................................11

*Ozbakir v. Scotti*,
764 F. Supp. 2d 556 (W.D.N.Y. 2011) ..................................................................21

*PC Connector Solutions LLC v. SmartDisk Corp.*,
406 F.3d 1359 (Fed. Cir. 2005) .............................................................................11

*Resqnet.com, Inc. v. Lansa, Inc.*,
346 F.3d 1374 (Fed. Cir. 2003) .............................................................................13

*Roche Palo Alto LLC v. Lupin Pharmaceuticals, Inc.*,
2012 WL 983697 (D.N.J. Mar. 21, 2012) ..............................................................13

*Seirus Innovative Accessories, Inc. v. Cabela's, Inc.*,
2010 WL 6675046 (S.D. Cal. Apr. 20, 2010) ....................................................8, 16

*Sergeants Benev. Ass'n Health & Welfare Fund v. Sanofi-Aventis U .S. LLP*,
2012 WL 4336218 (E.D.N.Y. Sept. 17, 2012) ........................................................21

*Simon Prop. Grp., Inc. v. Palombaro*,
682 F. Supp. 2d 508 (W.D. Pa. 2010) ......................................................................8

*Site Pro-1, Inc. v. Better Metal, LLC*,
506 F. Supp. 2d 123 (E.D.N.Y. 2007)........................................................................6

*Sosa v. DirectTV, Inc.*,
437 F.3d 923 (9th Cir. 2006) .............................................................................19, 20

*Subaru Distribs. Corp. v. Subaru of Am., Inc.*,
425 F.3d 119 (2d Cir. 2005) .....................................................................................6

*Takeda Pharmaceutical Co. Ltd. v. Mylan, Inc.*,
2012 WL 482813 (S.D.N.Y. Oct. 11, 2012).............................................................12

*Thorner v. Sony Computer Entertainment America LLC*,
669 F.3d 1362 (Fed. Cir. 2012) ..............................................................................22

*Valencia ex rel. Franco v. Lee*,
316 F.3d 299 (2d Cir. 2003) .....................................................................................23

*Ventana Medical Systems, Inc.v. Biogenex Laboratories, Inc.*,
473 F.3d 1173 (Fed. Cir. 2006) ........................................................................12, 13

*Zenith Elecs. Corp. v. Exzec, Inc.*,
182 F.3d 1340 (Fed. Cir. 1999) ........................................................................ 7

## Other Authorities

18 U.S.C. § 1341 ........................................................................................17

18 U.S.C. § 1343 ........................................................................................17

18 U.S.C. § 1951 ....................................................................................17, 18

18 U.S.C. § 1952 .....................................................................................4, 17

18 U.S.C. § 1961 ..........................................................................................1

18 U.S.C. § 1962(c) ......................................................................................4

18 U.S.C. § 1962(d) .................................................................................4, 23

28 U.S.C. § 1367 ..........................................................................................4

28 U.S.C. § 1367(c) ..............................................................................23, 24

28 U.S.C. § 1367(c)(3) ...............................................................................23

35 U.S.C. § 101 ............................................................................................3

35 U.S.C. § 285 ......................................................................................3, 19

California Business & Professional Code § 17200 ...................................4, 9

California Penal Law § 518 ..........................................................................17

California Penal Law § 519 ..........................................................................17

California Penal Law § 524 ..........................................................................17

Defendants DecisionSorter, LLC, The Hillcrest Group, Inc., Eileen C. Shapiro and Steven J. Mintz respectfully submit this Memorandum of Law in Support of Their Motion to Dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). Plaintiff FindTheBest.com, Inc.'s ("FTB") amended complaint, like its original complaint, seeks to criminalize the constitutionally protected activity of enforcing duly issued patent rights. That effort should not be countenanced.

## PRELIMINARY STATEMENT

On November 29, 2011, the United States Patent and Trademark Office issued U.S. Patent No. 8,069,073, entitled "System and Method for Facilitating Bilateral and Multilateral Decision-Making" (the "'073 Patent"), to defendants Eileen C. Shapiro and Steven J. Mintz (the "Inventors"), who ultimately assigned it to defendant Dalton Sentry, LLC. As a duly issued patent, the '073 Patent was presumed valid, and conferred on its owner the express statutory rights to exclude others from making, using, selling or offering to sell the claimed invention in the United States, and to seek compensation of at least a reasonable royalty from those so making, using, selling or offering to sell the patented invention without consent (*i.e.*, without license).[1]

FTB alleges in its amended complaint in this action that the Inventors, as the supposed masterminds of a scheme to enforce through litigation these statutorily granted rights in the '073 Patent, are guilty of racketeering under the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq.* ("RICO") – a statute typically reserved for pursuing organized crime operatives and drug dealers – as well as liable under various state law

---

[1] The Court, in the related patent infringement litigation against FTB, invalidated the '073 Patent as claiming non-statutory subject matter. Until the '073 Patent was invalidated, it enjoyed a strong presumption of validity, and anyone seeking to enforce the patent was entitled to rely on that presumption.

claims. Under the *Noerr-Pennington* doctrine, however, FTB's claims based on defendants' supposed litigation activity are barred unless FTB can plausibly allege that such activity is a sham. FTB has not plausibly alleged that the patent infringement litigation against it is a sham (*i.e.*, that it is objectively baseless).

In FTB's conception, the Inventors' time and expense in securing the '073 Patent and the legal rights that accompanied that patent are irrelevant. Under FTB's assertion, the Inventors' mere attempt to protect their rights in the '073 Patent from infringement from those who would use their invention without compensation amounts to a RICO enterprise involving a continuous pattern of serious felonious conduct, including extortion under the Hobbs Act, mail and wire fraud, and violations of the Travel Act.[2]

Although written in purple prose, the amended complaint essentially alleges that defendants own the '073 Patent, that they have sued twenty or more defendants alleging infringement of the '073 Patent, and that many of those defendants have chosen to take a license to the '073 Patent rather than to contest the infringement allegations. In order to make it seem as if Lumen View has in fact asserted a series of frivolous patent lawsuits, FTB, in the amended complaint, offers a construction of the claims of the '073 Patent that is at odds with the plain language of the claims, the specification of the '073 Patent and the prosecution file histories of the '073 Patent and its parent applications. Using the straw man of its wrongly construed claims, FTB then argues that the defendants in those actions obviously do not infringe the '073 Patent. When that sleight of hand is stripped away, the amended complaint is shown to be as indefensible as the original complaint.

---

[2] Defendants accept the well-plead allegations in the amended complaint as true for purposes of this motion. Defendants vigorously dispute FTB's contentions, however, and submit that, should this case proceed, FTB will be utterly unable to prove its central contention that the Inventors are somehow behind this entire "scheme."

This is not a RICO case – as should be obvious to all involved, including FTB. The amended complaint's stringing together of all the appropriate RICO buzzwords does not change that fact. Defendant Lumen View Technology LLC ("Lumen View"), which is now the exclusive licensee of the '073 Patent, had the statutory right to seek compensation from those who it reasonably believed infringed the patent. It, and the other defendants, should not be subjected to a nonsensical RICO complaint for having done so. The amended complaint should be dismissed with prejudice.

## PROCEDURAL HISTORY

On May 29, 2013, Lumen View filed *Lumen View Technology LLC. v. FindTheBest.com, Inc.*, 13-cv-03599-DLC, which was assigned to this Court (the "Patent Infringement Action").[3] The complaint in the Patent Infringement Action asserted a single claim for direct infringement of the '073 Patent. FTB filed its answer on July 8, denying the material allegations in the complaint, and asserting nine skeletal, boilerplate affirmative defenses. FTB did not counterclaim for a declaration of non-infringement or to invalidate the '073 Patent. FTB later moved for judgment on the pleadings to invalidate the '073 Patent on the ground that it does not claim patentable subject matter under 35 U.S.C. § 101. On November 22, 2013, the Court issued an Opinion and Order invalidating the '073 Patent, and dismissed the Patent Infringement Action.[4]

FTB filed the original complaint in this action on September 16, 2013. In addition to naming Lumen View (as the plaintiff in the Patent Infringement Action), the

---

[3] As explained below, the Court may take judicial notice of the docket entries in the Patent Infringement Action in considering defendants' motion to dismiss here.

[4] Lumen View has filed a Notice of Appeal of the Court's Order [Dkt. 58]. Despite the appeal, FTB filed a motion seeking a finding that the case is exceptional under 35 U.S.C. § 285, and for recovery of attorneys' fees in defending the Patent Infringement Action [Dkt. 59].

complaint named as defendants the Inventors, DecisionSorter, LLC, The Hillcrest Group, Inc., and Dalton Sentry, LLC. The original complaint alleged that defendants formed an "association together for the common purpose of extorting money out of individuals and entities, including FTB" (Complaint ¶ 1), but did not make any specific allegations against any defendants other than Lumen View (and in one instance, Eileen Shapiro), and the allegations against Lumen View relate almost entirely to acts taken by its counsel. The linchpin of FTB's theory of the case in this action is that the Patent Infringement Action is a sham that was undertaken with virtually no pre-suit investigation.

Based on its broad, conclusory allegations of conspiracy and criminal conduct, the original complaint asserted six claims for relief, two federal statutory claims and four state law claims: (1) a RICO violation under 18 U.S.C. § 1962(c) based on an alleged pattern of extortion and mail and wire fraud; (2) conspiracy to violate RICO under 18 U.S.C. § 1962(d); (3) extortion; (4) abuse of process; (5) civil conspiracy; and (6) a violation of Cal. Bus. & Prof. Code §§ 17200 *et seq.* The state law claims were asserted under the Court's supplemental jurisdiction, 28 U.S.C. § 1367, and supposedly under diversity jurisdiction (Complaint ¶ 26), but the complaint failed to allege the citizenship of all the parties.

Defendants moved to dismiss the original complaint on October 31, 2013, arguing that all of FTB's claims were barred by the *Noerr-Pennington* doctrine, and that the complaint failed to state any claim for relief under RICO or any of the asserted state law claims. Conceding the correctness of defendants' motion, FTB declined to oppose it and instead served its amended complaint on November 22, 2013. The amended complaint asserts the same six claims for relief, although FTB has added alleged violations of the Travel Act, 18 U.S.C. § 1952, as RICO predicate acts.

In order to provide seemingly plausible allegations in the amended complaint that Lumen View has asserted a series of sham lawsuits, FTB construes the claims of the '073 Patent in a way that is most favorable to its current litigation position (and that is different from the constructions it offered in the Patent Infringement Action), and then argues that none of the defendants that Lumen View sued (many of whom took a license) have websites that remotely infringe the '073 Patents. In particular, although FTB did not contend in the Patent Infringement Action that the claims in the '073 Patent require the creation of "preference profiles," the use of a "'series of forced choice questions,'" or the use of "conjoint analysis," and although the claims plainly do not require these elements, FTB now argues that they must be present in any infringing system, and that none of the systems challenged by Lumen View has these elements. (*See, e.g.*, Amended Complaint ¶¶ 31-32, 36, 48) Thus, FTB tries to assert that all of the lawsuits are sham, extortionate actions.

None of FTB's claims has any merit. They are all based on conclusory, unspecific or plainly wrong allegations that fail to make out any plausible claim for relief.

## ARGUMENT

## I. DISMISSAL IS REQUIRED UNDER RULE 12(B)(6) UNLESS THE COMPLAINT STATES A PLAUSIBLE CLAIM FOR RELIEF.

To withstand a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Analyzing a complaint is "a

context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

In considering a motion to dismiss, a court must "take[ ] factual allegations [in the complaint] to be true and draw[ ] all reasonable inferences in the plaintiff's favor." *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). In addition, a court may take judicial notice of documents integral to or referred to in the complaint, documents filed in other courts and other public records, and documents within a plaintiff's possession or of which a plaintiff had knowledge and relied upon in bringing suit. *See, e.g., Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006); *Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005); *Chambers v. Time Warner; Inc.*, 282 F.3d 147, 152-53 (2d Cir.2002); *Site Pro-1, Inc. v. Better Metal, LLC*, 506 F. Supp. 2d 123 (E.D.N.Y. 2007); *Abercrombie v. Andrew College*, 438 F. Supp. 2d 243 (S.D.N.Y. 2006). The Court may also take judicial notice of relevant pleadings, orders and judgments from a related action without converting the motion to one for summary judgment. *See Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991); *In re Enron Corp.*, 379 B.R. 425, 431 n.18 (S.D.N.Y. 2007).[5]

## II. FTB'S SUIT IS BARRED BY THE *NOERR-PENNINGTON* DOCTRINE.

As shown below, the First Amendment to the United States Constitution protects Lumen View's ability to have sought to enforce its rights as exclusive licensee of the '073 Patent

---

[5] The documents attached to the Declaration of Carl Riehl dated December 23, 2013 ("Riehl Decl.") submitted with this motion may all be considered by the Court without converting the motion to one for summary judgment. Exhibit A is simply the amended complaint in this action. Exhibit B is an excerpt from the prosecution file history for U.S. Patent No. 6,915,269 ("'269 Patent") that is quoted in the amended complaint and that is publicly available from the website of the U.S. Patent and Trademark Office ("USPTO"). Exhibit C is a copy of the '269 Patent, which is part of the referenced prosecution file history and is likewise a publicly available government document. Exhibit D is an excerpt from the prosecution file history for the '073 Patent, which is referenced in the amended complaint and which is publicly available from the USPTO website. Exhibit E is a document filed by the parties in the Patent Infringement Action. (Riehl Decl. ¶¶ 2-6)

through litigation.  That immunity for litigation-related conduct, which can only be removed if the litigation is a sham, extends both to the federal RICO claims and FTB's state law claims. The amended complaint fails to allege plausibly that Lumen View's patent enforcement lawsuits were a sham.  All of FTB's claims for relief in the amended complaint should be dismissed.

### A.    Lumen View's Filing of Lawsuits to Enforce the '073 Patent Was Constitutionally Protected Activity Unless They Were Sham Lawsuits.

"Although originally developed in the antitrust context, the *Noerr-Pennington* doctrine is one that protects First Amendment activity under the Petition Clause.  For this reason, the doctrine has been extended beyond the antitrust context to provide immunity from a wide variety of claims."  *GMA Cover Corp. v. SAAB Barracuda LLC*, 2012 WL 642739, at *14 (E.D. Mich. Feb. 8, 2012).  "A plaintiff claiming that a patent holder has engaged in wrongful conduct by asserting claims of patent infringement must establish that the claims of infringement were objectively baseless," *Globetrotter Software, Inc. v. Elan Computer Grp., Inc.*, 362 F.3d 1367, 1377 (Fed. Cir. 2004), and brought in subjective bad faith – *i.e.*, that the claims are a sham.  *Id.* at 1374 (citing  *Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1355 (Fed. Cir. 1999)).  Stated otherwise, it "is now well-established" that state "tort claims against a patent holder . . . based on enforcing a patent in the marketplace, are 'preempted' by federal patent laws, unless the claimant can show that the patent holder acted in 'bad faith' in the publication or enforcement of its patent."  *800 Adept, Inc. v. Murex Sec., Ltd.*, 539 F.3d 1354, 1369 (Fed. Cir. 2008).[6]  The *Noerr-Pennington* immunity for patent enforcement activity extends to federal RICO claims as well.  *In re Innovatio IP Ventures, LLC Patent Litig.*, 921 F. Supp. 2d 903 (N.D. Ill. 2013).

---

[6] Federal Circuit law controls the application of the *Noerr-Pennington* doctrine where the underlying claims are based on the enforcement of patent rights.  *Globetrotter Software,* 362 F.3d at 1374; *In re Indep. Serv. Orgs. Antitrust Litig.*, 203 F.3d 1322, 1325 (Fed. Cir. 2000).

"Bad faith includes separate objective and subjective components. . . . To be objectively baseless, the infringement allegations must be such that 'no reasonable litigant could reasonably expect success on the merits.'" *Dominant Semiconductors Sdn. Bhd. v. Osram GmbH*, 524 F.3d 1254, 1260 (Fed. Cir. 2008) (quoting *GP Indus., Inc. v. Eran Indus., Inc.*, 500 F.3d 1369, 1374 (Fed. Cir. 2007). "'The subjective component relates to a showing that the patentee in enforcing the patent demonstrated subjective bad faith.'" *JS Prods., Inc. v. Kabo Tool Co.*, 2012 WL 607446, at *3 (D. Nev. Feb. 24, 2012) (quoting *800 Adept, Inc.*, 539 F.3d at 1370). The Court, however, should not reach the subjective component unless the plaintiff first adequately alleges objective baselessness. *Dominant Semiconductors*, 524 F.3d at 1264; *In re Indep. Serv. Orgs. Antitrust Litig.*, 203 F.3d at 1327.

It is also well-settled that allegations of objective baselessness must meet the plausibility pleading requirements established in *Iqbal* and *Twombly*. For example, in considering allegations of objective baselessness, the court in *JS Prods., Inc. v. Kabo Tool Co.*, wrote:

> No facts have been alleged in the complaint that would lead the Court to conclude that Kabo's claim of infringement was objectively baseless or that no reasonable litigant could realistically expect success on the merits. JSP simply makes the legal conclusion that Kabo's infringement claim was baseless and expects the Court to accept it as true without any other allegations supporting the assertion. Because the Court need not accept as true legal conclusions couched as factual allegations such as this, *see Twombly*, 550 U.S. at 555, JSP has failed to properly allege that Kabo's infringement claim was objectively baseless and thus in bad faith.

2012 WL 607446 at *4; *see also GMA Cover Corp.*, 2012 WL 642739 at *11; *Seirus Innovative Accessories, Inc. v. Cabela's, Inc.*, 2010 WL 6675046, at *5 (S.D. Cal. Apr. 20, 2010); *Simon Prop. Grp., Inc. v. Palombaro*, 682 F. Supp. 2d 508, 511 (W.D. Pa. 2010).

These principles are amply demonstrated in a recent case in which the court dismissed both RICO and state law claims that challenged the plaintiff's patent enforcement

activity.  *See In re Innovatio IP Ventures, LLC Patent Litig.*, 921 F. Supp. 2d 903 (N.D. Ill. 2013).  In *Innovatio*, the plaintiff, Innovatio, "sued numerous hotels, coffee shops, restaurants, supermarkets, and other commercial users of wireless internet technology" for patent infringement.  *Id*. at 906.  Certain manufacturers of the challenged wireless internet technology then sued Innovatio for "fraudulently enforcing its patents against the Manufacturers' customers."  *Id.*  In addition to filing lawsuits, Innovatio also sent out more than 8,000 pre-litigation demand letters which, according to the manufacturers, "threaten protracted negotiations with onerous burdens on end users, and offer supposed 'discounts' for promptly paying Innovatio without engaging in such negotiations, while making it clear that Innovatio will initiate costly litigation with anyone that does not acquiesce."  *Id.* at 907-08.  The manufacturers also alleged that "Innovatio has filed twenty-three 'sham' lawsuits against Targets who refused to buy a license, all 'to enhance the credibility of its threats.'"  *Id.* at 909.  Like here, the manufacturers' claims included, among others, RICO based on mail and wire fraud and extortion, violation of California Business & Professional Code § 17200, and civil conspiracy.  *Id.* at 906.  The court carefully analyzed the allegations of Innovatio's objectively baseless conduct, and concluded from the face of the complaint that the claims as alleged were not objectively baseless.  *Id.* at 915-22.  Accordingly, the court dismissed both the federal RICO and state law claims mentioned above.  *Id.* at 922.

To survive the motion to dismiss, the amended complaint must plausibly allege, with some factual support, that the Patent Infringement Action was objectively baseless, *and that Lumen View (acting in concert with the other defendants) filed it in subjective bad faith.  As shown below, the amended complaint fails to do so, and should be dismissed.

**B. FTB's Amended Complaint Fails to Adequately Allege that Lumen View Has Engaged in Sham Litigation.**

FTB essentially alleges two bases for its contention that defendants (through Lumen View) have engaged in objectively baseless patent litigation: (1) that Lumen View uses an overly broad, plainly wrong claim construction to challenge obviously non-infringing websites; and (2) that Lumen View did not conduct any pre-suit investigation of the claim it filed against FTB in the Patent Infringement Action. Both of these arguments are wrong.

**1. The amended complaint does not plausibly allege that Lumen View filed objectively baseless lawsuits.**

FTB uses its own tortured construction of the '073 Patent, and then alleges that its website does not infringe the claims of the patent it has construed (which is *not* the actual invention claimed in the'073 Patent). Claim 1 in the '073 Patent reads as follow:

> 1. A computer-implemented method for facilitating evaluation, in connection with the procurement or delivery of products or services, in a context of at least one of (i) a financial transaction and (ii) operation of an enterprise, such context involving a first class of parties in a first role and a second class of counterparties in a second role, the method comprising:
>
> in a first computer process, retrieving first preference data from a first digital storage medium, the first preference data including attribute levels derived from choices made by at least one of the parties in the first class;
>
> in a second computer process, retrieving second preference data from a second digital storage medium, the second preference data including attribute levels derived from choices made by at least one of the counterparties in the second class;
>
> in a third computer process, for a selected party, performing multilateral analyses of the selected party's preference data and the preference data of each of the counterparties, and computing a closeness-of-fit value based thereon; and
>
> in a fourth computer process, using the computed closeness-of-fit values to derive and provide a list matching the selected party and at least one of the counterparties.

(Riehl Decl. Ex. A Col. 18, lines 32-55). As is evident, claim one does not contain the terms "preference profiles," a "'series of forced choice questions,'" or "conjoint analysis." Nor did FTB contend during claim construction in the Patent Infringement Action that the claims in the '073 Patent should in any way be construed to include these terms as claim limitations. (Riehl Decl. Ex. E) Now, however, as part of its litigation in this action, FTB purports to construe the claims in the '073 Patent to mandate each of these limitations.

Based on this construction, FTB alleges that "the '073 Patent does not apply to the following four situations: (1) where a preference profile for only one party is created from forced choice questions; (2) where preference profiles are not created in response to forced choice questions; (3) where a conjoint analysis/statistical analysis is not applied to two or more preference profiles; and (4) where the parties do not rank or set a value to their responses to forced choice questions." (Amended Complaint ¶ 32) From there, FTB describes its own website and supposedly each of the defendants' websites in Lumen View's other infringement actions, and asserts that they lack one or more of these required claim limitations (at least according to FTB). (Amended Complaint ¶ 48) FTB thus concludes that it is "obvious" that none of these defendants infringe the '073 Patent, that Lumen View did know and had to know of the non-infringement, and that its lawsuits are therefore a sham. (*Id* ¶ 35, 58)

As an initial matter, claim construction is a matter of law for the Court. *Advanced Cardiovascular Systems, Inc. v. Medtronic, Inc.*, 265 F.3d 1294, 1304 (Fed. Cir. 2001); *see also PC Connector Solutions LLC v. SmartDisk Corp.*, 406 F.3d 1359, 1362 (Fed. Cir. 2005); *Masco Corp. v. United States*, 303 F.3d 1316, 1323 (Fed. Cir. 2002); *Abbvie Inc. v. Mathilda and Terence Kennedy Institute of Rheumatology*, 2013 WL 3853149, *44 (S.D.N.Y. June 20, 2013); *Aventis Pharmaceuticals Inc. v. Amino Chemicals Ltd.*, 715 F. 3d 1363, 1371 (Fed. Cir. 2013);

*Takeda Pharmaceutical Co. Ltd. v. Mylan, Inc.*, 2012 WL 482813, *2 (S.D.N.Y. Oct. 11, 2012). So FTB's allegations in the amended complaint about the meaning of the claims in the '073 Patent are not accepted as true for purposes of this motion to dismiss, or for determining whether FTB has plead sufficient plausible *factual* allegations to state a claim against defendants.

Moreover, in making its erroneous claim constructions, FTB relies not on the claim language itself, but instead on language drawn from the specification, typically describing only particular embodiments of the invention claimed in the '073 Patent rather than the overall invention itself. (Amended Complaint ¶ 31) It is settled law, though, that the wording of the claims, not the written description, defines the invention. *Roche Palo Alto LLC v. Lupin Pharmaceuticals, Inc.*, 2012 WL 983697, *2 (D.N.J. Mar. 21, 2012); *see also Ventana Medical Systems, Inc.v. Biogenex Laboratories, Inc.*, 473 F.3d 1173, 1181 (Fed. Cir. 2006); *Takeda Pharmaceutical Co. Ltd.*, 2012 WL 482813 at *2. As a result, courts must be careful not to read limitations from the specification into the wording of the claims, as FTB is trying to do here. *Thorner v. Sony Computer Entertainment America LLC*, 669 F.3d 1362, 1366-67 (Fed. Cir. 2012); *Takeda Pharmaceutical Co. Ltd.*, 2012 WL 482813 at *2; *Famosa Corp. v. Gaiam, Inc.*, 2012 WL 865687, *2 (S.D.N.Y. Mar. 14, 2012).

FTB also purports to rely on the prosecution history of the '073 Patent in support of its supposed claim construction. In particular, FTB alleges:

> In fact, in prosecuting the patent and distinguishing the claims from prior art, the inventors represented to the USPTO "that the claims require that conjoint analysis be applied to both sides in a matching situation . . . ." The inventors made this representation to avoid a determination that the invention was obvious and non-patentable.

(Amended Complaint ¶ 31c) This snippet was drawn from literally hundreds of pages of prosecution history for the '073 Patent and the other patents in the family, and was not taken – as

FTB suggests – from the '073 Patent file history, but from the file history for U.S. Patent No. 6,915,269 (the "'269 Patent"), the parent twice removed of the '073 Patent. (*See* Riehl Decl. Ex. B at 2) FTB neglects to mention in its amended complaint that almost all of the claims in the '269 Patent expressly claim conjoint analysis (Riehl Decl. Ex. C), whereas *none* of the claims in the '073 Patent in any way mention "conjoint analysis."[7] In these circumstances, the prosecution history of the '269 Patent is irrelevant to construing the claims in the '073 Patent. *Ventana Medical Systems, Inc.*, 473 F.3d at 1182; *Resqnet.com, Inc. v. Lansa, Inc.*, 346 F.3d 1374, 1383 (Fed. Cir. 2003); *Advanced Cardiovascular Systems, Inc.*, 265 F.3d at 1305-6; *Roche Palo Alto LLC*, 2012 WL 983697 at*5.[8]

   FTB's purported claim construction is irretrievably flawed. Thus, the amended complaint does not plausibly allege that Lumen View engages in objectively baseless patent litigation. In the guise of stating factual allegations, FTB usurps the Court's role in construing the '073 Patent, and then concludes that neither it nor any other patent infringement defendant infringes the '073 Patent as so construed by FTB. These allegations are insufficient to state plausible claims, and the amended complaint should be dismissed.

   **2.  The amended complaint does not plausibly allege that Lumen View failed to conduct a pre-suit investigation.**

   The remainder of the amended complaint is premised on the conclusory allegation that Lumen View's infringement claim against it is a sham pleading – *i.e.*, that the infringement contention is objectively baseless and that Lumen View asserted it without having made any pre-

---

[7] On the contrary, the Examiner of the application that matured into the '073 Patent expressly noted the "omission of the conjoint analysis" in the claims in the '073 Patent. (Riehl Decl. Ex. D at 7)

[8] If defendants and the Court were to adopt FTB's reasoning from the amended complaint, FTB's misattribution of a quote from the file history from the '269 Patent rather than the '073 Patent would immediately be ascribed to nefarious intent rather than, for example, a simple error made in the press of litigation.

suit investigation.  FTB, however, alleges only four specific facts in support of these sweeping allegations:

- that the complaint in the Patent Infringement Action against FTB (and supposedly the complaints against the defendants in the other infringement actions asserted by Lumen View) is a "general 'form' complaint" (Amended Complaint ¶ 39);

- that as a result of a discussion between FTB's Director of Operations and Lumen View's counsel, the Director of Operations concluded that counsel lacked an understanding of how FTB's website functioned and of the process covered by the '073 Patent (*id.* ¶¶ 60-64);

- that Lumen View identified only one witness in its Initial Disclosures, and that witness supposedly had never heard of FTB (according to a conversation FTB's CEO supposedly had with him) (*id.* ¶¶ 71-72); and

- that Lumen View's Preliminary Infringement Contentions are somehow inadequate under the Local Patent Rules of the Southern District of New York (*id.* ¶ 74).

That last assertion – that the Preliminary Infringement Contentions are inadequate – has already been rejected by this Court.  In a September 24, 2013 Order in the Patent Infringement Action [Dkt. 25], the Court denied FTB's request that the Contentions be stricken or modified.[9]

FTB's claim that Lumen View's use of a form complaint somehow shows that there was no pre-suit investigation is likewise baseless.  Form 18 in the Appendix to the Federal Rules of Civil Procedure is a form patent complaint alleging, as is alleged here, direct

---

[9] It is notable that FTB attacks Lumen View's litigation conduct as essentially criminal, yet FTB persists in challenging the adequacy of Lumen View's Preliminary Infringement Contentions even though the Court rejected FTB's concerns months ago.

infringement of a patent. Even post-*Iqbal* and *Twombly*, "Form 18 and the Federal Rules of Civil Procedure do not require a plaintiff to plead facts establishing that each element of an asserted claim is met. Indeed, a plaintiff need not even identify which claims it asserts are being infringed." *In re Bill of Lading Transmission and Processing Sys. Patent Litig.*, 681 F.3d 1323, 1335 (Fed. Cir. 2012) (citation omitted). FTB did *not* challenge the complaint in the infringement action as insufficient to state a claim or to meet the requirements of Form 18, nor could it have done so since the infringement complaint plainly meets those standards. Thus, no plausible inference of a lack of pre-suit investigation can be drawn from the fact that Lumen View filed an infringement complaint that is consistent with Form 18's pleading requirements.

Lumen View's Initial Disclosures in the Patent Infringement Action also do not support the claim that Lumen View did not undertake a pre-suit investigation of FTB's infringement. FTB contends that Lumen View's listed witness, Mr. Dawkins, knew nothing of FTB's infringement when contacted by FTB. (Amended Complaint ¶ 72) Lumen View's counsel, however, not Lumen View's identified witnesses, was responsible for the pre-suit investigation. FTB's CEO's alleged dealings with Mr. Dawkins provide no information whatsoever about the state of Lumen View's counsel's knowledge or any investigation that counsel undertook.

The only allegation in regard to counsel is FTB's fourth allegation supposedly supporting a lack of pre-suit investigation – that Lumen View's counsel assertedly did not understand FTB's website in a conversation with FTB's Director of Operations. It simply cannot be the case that FTB's entire contention that the Patent Infringement Action is a sham can rest on an allegation that, in FTB's opinion, Lumen View's counsel did not understand how the FTB website works. Indeed, it is as plausible, if not more so, that Lumen View's counsel did

understand how the website infringes the '073 Patent, and that FTB's Director of Operations, who evidently is not a lawyer and has an obvious self-interest in denying infringement, did not appreciate that infringement.

Since the amended complaint fails to allege adequately that the Patent Infringement Action against FTB is objectively baseless, it also fails to allege that defendants have acted in subjective bad faith. FTB's theory of the case is that Lumen View and the other defendants pursue infringement actions on the '073 Patent without regard to the merits of the claims in an effort to "extort" a quick settlement in a modest amount to avoid the cost of litigation. As shown above, though, FTB fails to allege facts sufficient to support plausibly the contention that defendants in fact file suit without adequate pre-suit investigation. Nor could they, since the complaint itself alleges that many of the infringement defendants have taken a license to the '073 patent.[10] Without that contention, FTB's argument for defendants' subjective bad faith collapses into the allegation that they file lawsuits to collect money for patent infringement. Since, as the exclusive licensee of the patent, Lumen View had the statutory right to seek at least a reasonable royalty from those who would use the '073 Patent without its consent, it cannot be bad faith for Lumen View to file lawsuits to collect money to which it might be entitled.

FTB apparently fervently believes that its website does not infringe the '073 Patent and that anyone who thinks otherwise simply did not investigate or understand the facts. That belief, however, cannot substitute for well-grounded factual allegations plausibly showing that Lumen View's complaint is a sham because Lumen View undertook no pre-suit

---

[10] In light of this history of Lumen View's patent litigation success, FTB must do more than simply allege in conclusory fashion that it resulted from abusive litigation tactics. *See Seirus Innovative Accessories, Inc.*, 2010 WL 6675046 at *5.

investigation of FTB's infringement. Such allegations are plainly absent here. The *Noerr-Pennington* defense bars all of the claims stated in the amended complaint.

## III. FTB FAILS TO STATE A CLAIM FOR RELIEF UNDER RICO, 18 U.S.C. §§ 1961 *ET SEQ.*

So as not to burden the Court with duplicative argument, the movants here join in the arguments made by Lumen View in its Memorandum of Law in Support of Defendant Lumen View Technology LLC's Motion to Dismiss dated December 16, 2013 [Dkt. 52] seeking dismissal of the RICO claims on the grounds that: (1) FTB has failed to allege fraud with particularity and to particularize the conduct of each defendant; (2) FTB has failed to allege a pattern of racketeering activity having the requisite continuity; (3) FTB has failed to allege any cognizable RICO injury; and (4) FTB's RICO conspiracy claim fails because the substantive RICO claim must be dismissed.

There are three additional flaws in FTB's RICO claim: (1) the conduct alleged by FTB – filing meritless lawsuits – cannot constitute the predicate act of extortion; (2) FTB does not plausibly allege that it or anyone else relied on defendants' supposedly fraudulent statements; and (3) the service and filing of litigation documents by mail or use of the wires is not sufficient to establish a RICO predicate act. FTB premises its claim that defendants engaged in a "pattern" of racketeering on their supposed acts of mail and wire fraud under 18 U.S.C. §§ 1341, 1343, and on their alleged acts of extortion under the Hobbs Act, 18 U.S.C. 1951, and California Penal Law §§ 518, 519, 524.[11] The amended complaint, however, fails to allege adequately essential elements needed for these claims, requiring the dismissal of the RICO-related claims for relief.

---

[11] The amended complaint adds alleged violations of the Travel Act, 18 U.S.C. § 1952, as additional predicate acts. (Amended Complaint ¶ 100-102) Since the extortion and mail and wire fraud claims are insufficient, however, the Travel Act claims are likewise insufficient. *Cintas Corp. v. Unite Here*, 601 F. Supp. 2d 571, 578 (S.D.N.Y. 2009).

## A. The Allegations of Extortion Fail as Predicate Acts Because the Filing of Litigation Is Not Extortion.

The gist of FTB's reliance on extortion as RICO predicate acts is contained in the allegations that "Defendants have threatened frivolous lawsuits and criminal prosecution unless FTB paid substantial sums of money," and that "Defendants also used litigation and the discovery process without any interest in the outcome of the litigation."[12] (Amended Complaint ¶¶ 79, 81) Not only does the complaint fail to plausibly plead that defendants engage in frivolous litigation, as shown above, but federal courts in New York hold that filing or threatening litigation, even meritless litigation, does not amount to extortion under 18 U.S.C. § 1951.

Indeed, "[t]hreats of litigation, even economically ruinous litigation, even unmeritorious litigation, do not constitute extortion." *DirectTV, Inc. v. Lewis*, 2005 WL 1006030, at *5 (W.D.N.Y. Apr. 29, 2005) (citing *G-I Holdings, Inc. v. Baron & Budd,* 179 F. Supp. 2d 233, 259 (S.D.N.Y. 2001)); *Elektra Entm't Grp., Inc. v. Santangelo*, 2008 WL 4452393, at *8 (S.D.N.Y. Oct. 1, 2008) (threats of and actual litigation do not constitute Hobbs Act violation); *Bldg. Indus. Fund v. Local Union No. 3*, 992 F. Supp. 162, 178 n.9 (E.D.N.Y. 1996) ("filing of a meritless lawsuit or administrative action, even if for the purpose of harassment, does not involve a threat of force, violence or fear," and therefore "cannot be said to constitute … extortion").

---

[12] FTB's attempt to premise its extortion claim on defendants' use of the discovery process in the Patent Infringement Litigation is ludicrous. A review of the docket in that action shows that FTB never sought the Court's intervention in any discovery dispute. In light of that fact, there can be no well-plead allegation of discovery abuses here. Merely because FTB asserts that Lumen View engaged in discovery abuses does not make it so. For example, FTB alleges in support of its claims in the amended complaint that Lumen View's Preliminary Infringement Contentions in the Patent Infringement Action were inadequate, a claim rejected by the Court.

In *Calabrese v. CSC Holdings, Inc.*, 2009 WL 425879 (E.D.N.Y. Feb. 19, 2009), the Court adopted in full the Magistrate Judge's Report and Recommendation rejecting a claim similar to FTB's that the threat of or filing of a meritless lawsuit could constitute extortion because defendants have no risk in asserting claims. The Court wrote:

> Moreover, the premise on which the plaintiffs rest their theory – namely, that the defendants had the ability to threaten, and where necessary, actually bring lawsuits that they knew or should have known to be meritless because there was no "downside risk" is *not* correct. The plaintiffs simply ignore the costs that the defendants would bear if, as the plaintiffs assert, they filed lawsuits in bad faith against the victims of their scheme who did not immediately settle. In such circumstances, the defendants would risk not only the loss of their own litigation costs and attorneys fees in litigating what would presumably be an unsuccessful claim under the [Federal Communications Act]; they would also risk being held liable for the victim's attorneys' fees and other litigation costs pursuant to Rule 11(c)(4).

2009 WL 425879 at *15. FTB is already pursuing precisely that course here, having moved under 35 U.S.C. § 285 to declare the Patent Infringement Action an exceptional case.

FTB's extortion claim is similarly insufficient under the California state extortion act (assuming that act even applies to a lawsuit started in this District). California's statute requires that the lawsuit alleged to be extortionate must also be objectively baseless. *Sosa v. DirectTV, Inc.*, 437 F.3d 923, 939-40 (9th Cir. 2006). As shown above, FTB has failed to sufficiently allege that the Patent Infringement Action or the other infringement actions are objectively baseless. Without the allegation of objective baselessness, FTB's allegations of extortion under the California statute fail.[13]

---

[13] If the allegations relating to the filing of the litigation are eliminated, as they must be, all that remains of FTB's extortion allegations are those relating to the supposed threatened prosecution for a hate crime. (Amended Complaint ¶¶ 68, 133) FTB, however, makes no effort to explain how that single act of "extortion" fits into a "pattern" of racketeering supposedly carried out by six separate defendants.

B.    **The Allegations of Mail and Wire Fraud Fail as Predicate Acts.**

The amended complaint, though seemingly detailed, makes only the most fleeting, conclusory reference to FTB's reliance on defendants' supposed fraudulent misrepresentations underlying the mail fraud and wire fraud predicate acts. FTB also tries to create mail fraud and wire fraud from Lumen View's counsel's litigation activities. None of these allegations are sufficient to support predicate acts of mail fraud and wire fraud.

1.    **The allegations of mail and wire fraud fail as predicate acts because FTB does not allege reliance.**

Only one paragraph in the entire 136-paragraph amended complaint addresses FTB's alleged reliance on defendants' supposed fraudulent statements. (Amended Complaint ¶ 99) This paragraph alleges in only the most conclusory fashion that the "Defendants' false and misleading statements were relied upon by FTB and have caused FTB substantial damages." (*Id.*) FTB does not offer any further elaboration on how it in fact relied on defendants' supposed fraudulent statements, or how it would have even been possible for FTB or any other third party to do so, given the nature of the allegations of fraud.

The specific "fraudulent" representations to FTB identified in the complaint are defendants' "false representations regarding the nature of the '073 Patent, their purported right to 'licensing fees,' their 'settlement demands,' their false declaration and their threats of criminal prosecution."[14] (*Id.* ¶ 97) As noted, FTB does not identify a single action it took in supposed reliance on these alleged misrepresentations. It did not concede infringement, it did not take a

_____

[14] Supposed misrepresentations about the scope of the '073 Patent, and defendants' right to licensing fees or a settlement payment because of FTB's infringement of the '073 Patent could not support charges of mail or wire fraud in any event. The '073 Patent is a publicly available document that was in fact annexed to the patent infringement complaint. (Riehl Decl. Ex. A) FTB is as capable as defendants of determining the scope of the patent or evaluating representations about its scope. FTB could also reach its own conclusion about whether its website infringes the '073 Patent, and thus could evaluate any request for a licensing fee or settlement. There can be no mail or wire fraud in such circumstances. *Sosa*, 437 F.3d at 941.

license, it did not settle the patent infringement lawsuit, and it did nothing in response to the alleged threat of the hate crime prosecution. Instead, FTB successfully moved to invalidate the '073 Patent. And, of course, FTB filed this action against defendants, claiming that that their conduct in the Patent Infringement Action amounts to serious criminal misconduct. FTB also does not identify any reliance by any third party on defendants' supposed fraudulent statements, nor does it explain how any such third party could have relied on the statements.

FTB's failure to have properly alleged reliance is fatal to its claim of mail and wire fraud. "The Supreme Court has held that a plaintiff alleging a RICO violation need not demonstrate first-person reliance to establish causation [of RICO injury], but proof of at least third-party reliance is required." *Sergeants Benev. Ass'n Health & Welfare Fund v. Sanofi-Aventis U .S. LLP*, 2012 WL 4336218, at *3 (E.D.N.Y. Sept. 17, 2012) (citing *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 658 (2008)); *see also Calabrese*, 2009 WL 425879 at *12 ("[W]here the only misrepresentations at issue are those that the defendants made directly to each victim of the alleged scheme, a putative plaintiff cannot establish that his injury was proximately caused by the RICO violation if he cannot allege and prove that he personally relied on the misrepresentations."); *Ozbakir v. Scotti*, 764 F. Supp. 2d 556, 574 n.4 (W.D.N.Y. 2011).

FTB's bare allegation of reliance – under circumstances where it could not logically rely on defendants' supposed misrepresentations – is insufficient to state claims of mail and wire fraud. This defect was pointed out to FTB in defendants' motion to dismiss the original complaint. FTB added neither new allegations to the amended complaint concerning reliance nor any additional allegations explaining how FTB could have relied on Lumen View's supposed misrepresentations. The amended complaint also makes no allegations about why reliance could

or should be excused here.  Thus, FTB filed the amended complaint knowing that its allegations of mail fraud and wire fraud are insufficient under applicable law.

### 2.    Litigation conduct cannot support claims of mail fraud and wire fraud.

With the exception of a single alleged telephone call between defendant Eileen Shapiro and FTB's CEO (Amended Complaint ¶ 67), *all* of the alleged contact and communication between Lumen View and FTB was made by Lumen View's counsel with FTB or its counsel.  Thus, all of the supposed fraudulent misrepresentations on which FTB premises its mail fraud and wire fraud claims (*i.e.* the allegedly "threatening" letter from counsel, the supposed threat of criminal prosecution made by counsel, the allegedly false declaration from counsel) necessarily were made by Lumen View's counsel during the course of counsel's representation of Lumen View in the Patent Infringement Action.  Such "litigation activities," however, "cannot properly form the basis for RICO predicate acts."  *Curtis & Associates, P.C. v. Law Offices of David M. Bushman, Esq.*, 758 F. Supp. 2d 153, 169 (E.D.N.Y. 2010) (collecting cases); *see also Directv, Inc. v. Lewis*, 2005 WL 1006030, *8 (W.D.N.Y. Apr. 29, 2005) ("courts have held that serving litigation documents by mail cannot be a predicate act to establish mail fraud under the RICO statute").

For example, in *Daddona v. Gaudio*, 156 F. Supp. 2d 153, 162 (D. Conn. 2000), the plaintiff asserted RICO claims predicated on mail fraud and wire fraud, and alleged that the "pattern of racketeering activity carried on by the defendants is to engage in extensive litigation filing of false documents and affidavits which is a pattern that has infected the entire pleadings, this pattern is intended to injure, it is wilful, the defendants have engaged in similar conduct in other litigation . . ."  The Court rejected the RICO claim, ruling that the plaintiff's "allegations at best amount to a vague abuse of process or malicious prosecution claim."  *Id.*; *see also Sundwall*

*v. Weinstein & Assocs.*, 1997 WL 507724, *2 (D. Conn. Aug. 19, 1997) ("Plaintiff's other alleged predicate acts involve mail fraud and obstruction of justice claims, both arising out of defendants' alleged fraudulent activities in representing their clients in Connecticut state and federal courts. These allegations are insufficient, as a matter of law, to constitute the necessary predicate acts under RICO").

FTB premises its mail fraud and wire fraud claims on allegedly fraudulent misrepresentations made by Lumen View's counsel in the course of the Patent Infringement Action while representing Lumen View in that action. Such allegations are insufficient for a RICO claim.[15]

## IV. THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER FTB'S STATE LAW CLAIMS.

FTB brings state law tort claims of extortion, abuse of process, civil conspiracy, and unfair competition. As argued above, FTB is barred from asserting these claims pursuant to *Noerr-Pennington* and therefore they should be dismissed. But even if FTB's state law claims are not barred by *Noerr-Pennington*, the Court nonetheless should decline to exercise supplemental jurisdiction over the claims if it dismisses the federal RICO claims.[16]

A district court has the discretion under 28 U.S.C. § 1367(c) to decline to exercise supplemental jurisdiction over a claim if the court has dismissed all claims over which it had original jurisdiction. 28 U.S.C. § 1367(c)(3). The Second Circuit has held that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity –

---

[15] As noted above, the movants here join in Lumen View's argument that the RICO conspiracy claim under 18 U.S.C. § 1962(d) must be dismissed if the claim for the underlying RICO violation is dismissed.

[16] FTB has withdrawn its allegation of diversity jurisdiction. *Compare* Complaint ¶ 26 with Amended Complaint ¶ 27.

will point toward declining to exercise jurisdiction over the remaining state-law claims." *Valencia ex rel. Franco v. Lee,* 316 F.3d 299, 306 (2d Cir. 2003) (quoting *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n.7 (1988)). Where, as here, "neither the court[ ] nor the parties have yet invested time or other resources in conducting discovery or otherwise preparing this case for trial," *Hollander v. Flash Dancers Topless Club*, 340 F. Supp. 2d 453, 463 (S.D.N.Y. 2004), the court should decline to exercise supplemental jurisdiction upon its determination that the federal causes of action in the complaint fail as a matter of law. *See id.* Accordingly, the Court should exercise its authority under 28 U.S.C. § 1367(c) and dismiss FTB's state law claims.

## CONCLUSION

For all the foregoing reasons, movants respectfully submit that the amended complaint should be dismissed with prejudice and the Court should grant such additional relief as it deems just and proper.

Dated:  December 23, 2013

DEBEVOISE & PLIMPTON LLP

s/ Carl Riehl
Mark P. Goodman
mpgoodman@debevoise.com
Carl Riehl
criehl@debevoise.com
919 Third Avenue
New York, New York  10022
Tel.:  212-909-6000

Attorneys for DecisionSorter, LLC, The Hillcrest Group, Inc., Eileen C. Shapiro and Steven J. Mintz