UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
FINDTHEBEST.COM, INC.,                  :
                                        :    13 Civ. 6521 (DLC)
                    Plaintiff,          :
                                        :    OPINION & ORDER
         -v-                            :
                                        :
LUMEN VIEW TECHNOLOGY LLC; DALTON       :
SENTRY, LLC; DECISIONSORTER, LLC; THE   :
HILLCREST GROUP, INC; EILEEN C.         :
SHAPRIO; STEVEN J. MINTZ; and DOES 1    :
through 50,                             :
                    Defendants.         :
                                        :
----------------------------------------X


For the Plaintiff FindTheBest.com, Inc.:

Joseph Leventhal
Leventhal Law, LLP
600 West Broadway, Suite 700
San Diego, CA 92101

For the Defendants Decisionsorter, LLC, The Hillcrest Group,
Inc., Eileen C. Shapiro, and Steven J. Mintz:

Mark P. Goodman
Carl Riehl
Debevoise & Plimpton, LLP
919 Third Avenue
New York, New York 10022

For the Defendant Lumen View Technology, LLC
Stamatios Stamoulis
Richard C. Weinblatt
Stamoulis & Weinblatt, LLC
6 Denny Road, Suite 307
Wilmington, DE 19809

DENISE COTE, District Judge:

FindTheBest.com, Inc. ("FTB") filed this action on September 16, 2013, against Lumen View Technology LLC, ("Lumen"), Dalton Sentry, LLC, DecisionSorter, LLC, Hillcrest Group, Inc., Eileen C. Shapiro ("Shapiro"), and Steven J. Mintz ("Mintz") (collectively "the Defendants"), asserting violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq. ("RICO"), and various state laws.  FTB asserts that the Defendants made baseless claims of patent infringement to extort licensing fees from FTB and others.

FTB filed a first amended complaint ("FAC") on November 22, 2013.  The Defendants have moved to dismiss that complaint.  For the following reasons, the Defendants' motions to dismiss the RICO claims are granted.  The Court declines to exercise supplemental jurisdiction over the state law claims.


BACKGROUND

The FAC pleads six claims or "counts."  The core of each of these claims is that Lumen filed frivolous lawsuits in bad faith to extort money from FTB and others.  The first two counts are brought pursuant to the RICO statute, 18 U.S.C. §§ 1961, 1962(c) & (d), and assert a substantive violation of the statute and a RICO conspiracy.  The predicate acts for these two counts arise from the central assertion that the Defendants filed frivolous

patent infringement lawsuits against various businesses and demanded nuisance settlements.  The predicate acts are conclusorily identified as acts of mail and wire fraud, in violation of 18 U.S.C. §§ 1341 and 1343, respectively; a scheme to extort, in violation of both the Hobbs Act, 18 U.S.C. § 1951(a), and California State Penal Law § 518 et seq.; and a violation of the Travel Act, 18 U.S.C. § 1952.  The two RICO counts incorporate the allegations made throughout the FAC; they do not separately enumerate specific predicate acts.

The remaining four counts assert state law claims, including extortion by commencing frivolous patent infringement actions without probable cause and without a good faith investigation; abuse of process through the filing of litigation based on a vague patent in order to extort money; and two violations of California Business & Professions Code § 17200.  The two violations of the California statute assert first, participation in a civil conspiracy by means of threats, abuse of process and extortion, and second, the conduct of fraudulent business practices, which required FTB to devote significant time and resources to defend itself against frivolous and false claims.

The FAC alleges that the Defendants filed more than twenty patent infringement lawsuits in the eighteen months following the formation of Lumen on February 23, 2012.  Lumen is a Delaware company formed by Shapiro and Mintz.  Like DecisionSorter and the

Hillcrest Group, Lumen appears to be a shell company created for litigation purposes.  It has no business operations; it is a non-practicing entity.  Instead of conducting research, it acquires patents in order to file patent infringement lawsuits.

Lumen became the exclusive licensee of patent 8,069,073 ("'073 Patent") on March 1, 2012, which was approximately a week after Lumen was formed.  The '073 Patent was issued on November 29, 2011, for a "System and Method For Facilitating Bilateral And Multilateral Decision-Making."  Lumen filed its first patent infringement lawsuit asserting infringement of the '073 Patent on March 9, 2012.  The FAC asserts that the Defendants were aware that the parties named as defendants in the lawsuits filed by Lumen were not infringing the '073 Patent.

The FAC describes a pattern that the Defendants employed in bringing their lawsuits.  The Defendants use form complaints that make nearly identical accusations and conduct no investigation into the services offered by those they sue.  The Defendants serve a letter with the complaint that informs those named in their lawsuits that they may avoid the cost of litigation by paying a licensing fee to Lumen.  The letter threatens that Lumen will increase its settlement demands if the litigation progresses.  If those they have sued seek to defend themselves, Lumen threatens to contact their customers and to escalate its settlement fee demands.  The Defendants use their shell companies

to avoid complying with discovery requests.

According to the FAC, the Defendants do not actually want to litigate their patent infringement claims and do not want an injunction to stop any allegedly infringing conduct.  If someone is unable to pay a licensing fee, Lumen will voluntarily dismiss its lawsuit.

On May 30, 2013, Lumen sent a letter to FTB, enclosing the complaint that Lumen had filed against FTB in this district.  It invited FTB to contact Lumen to discuss "license" terms if it wanted to avoid the need to file a responsive pleading.  The letter threatened full-scale litigation, motion practice, and protracted discovery if FTB chose to defend itself in the litigation.  Lumen explained that its settlement demands would increase over the course of any litigation.  It demanded that FTB preserve not just accessible, but also inaccessible, electronically stored information, including information unrelated to the lawsuit.  It recommended confiscating electronic devices of employees with significant knowledge of FTB's products.

When FTB's CEO contacted Lumen's attorney, the attorney was unable to explain the basis for any claim of infringement.  The CEO called Shapiro, a co-inventor of the '073 Patent.  Thereafter, Lumen's attorney accused FTB's CEO of calling Shapiro a "patent troll," and stated that use of the term "patent troll"

constituted a hate crime in the Ninth Circuit.  Lumen's attorney explained that the offer of a licensing fee was only good until the close of business that day.  The FAC describes as well Lumen's alleged abuse of the discovery process in the lawsuit Lumen filed against FTB in this district.

Lumen's patent infringement lawsuit against FTB was dismissed by Opinion and Order of this Court of November 22, 2013.  Lumen View Tech. LLC v. Findthebest.com, Inc., 13 CIV. 3599 (DLC), 2013 WL 6164341 (S.D.N.Y. Nov. 22, 2013).  This Court held that the '073 Patent claimed an abstract idea, which was patent ineligible subject matter under the codified Patent Act, 35 U.S.C. § 101.  Id. at *16.

The Defendants moved to dismiss the original complaint in this action by motions of October 29 and 31, 2013.  FTB was given an opportunity to either amend its complaint or oppose the motions to dismiss.  On November 22, FTB filed the FAC.  On December 16, 2013, Lumen moved to dismiss the FAC.  Shapiro, Mintz, DecisionSorter, and Hillcrest filed a separate joint motion to dismiss on December 23.  And Dalton Sentry filed a motion to dismiss, also on December 23, which adopted in full the arguments in the latter motion.  On January 20, 2014, FTB filed a consolidated opposition.  The motions to dismiss were fully submitted on January 28.

DISCUSSION

The Defendants have moved to dismiss the FAC in its
entirety.  They have argued that their right to bring patent
infringement litigation is protected by the Noerr-Pennington
doctrine unless their lawsuits are a sham, and that the FAC does
not plausibly allege that those lawsuits are a sham.  See
Globetrotter Software, Inc. v. Elan Computer Grp., Inc., 362 F.3d
1367, 1377 (Fed. Cir. 2014).  They contend, as well, that the FAC
does not adequately plead a RICO claim.  Finally, they argue that
the Court should not exercise supplemental jurisdiction over the
state law claims.  Because the FAC does not plead a RICO
violation, and the Court declines to exercise supplemental
jurisdiction over state law claims, it is unnecessary to reach
the argument made under the Noerr-Pennington doctrine.

When deciding a motion to dismiss under Rule 12(b)(6), Fed.
R. Civ. P., the court must "accept all allegations in the
complaint as true and draw all inferences in the non-moving
party's favor."  LaFaro v. New York Cardiothoracic Group, PLLC,
570 F.3d 471, 475 (2d Cir. 2009).  To survive a motion to
dismiss, "a complaint must contain sufficient factual matter,
accepted as true, to state a claim to relief that is plausible on
its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation
omitted).  A complaint must do more, however, than offer "naked
assertions devoid of further factual enhancement."  Id. (citation

omitted).

Where fraud is alleged as a component of a RICO predicate act, Rule 9(b), Fed. Civ. P., imposes a heightened pleading standard.  "In the RICO context, Rule 9(b) calls for the complaint to specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiffs contend the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements."  Moore v. PaineWebber, Inc., 189 F.3d 165, 173 (2d Cir. 1999) (citation omitted).  "In addition, the plaintiffs must allege facts that give rise to a strong inference of fraudulent intent."  Id. (citation omitted).

I.   RICO

RICO provides a private cause of action for "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter."  18 U.S.C. § 1964(c).  The RICO provisions upon which FTB predicates its complaint are 18 U.S.C. § 1962(c), and 18 U.S.C. § 1962(d).

To state a viable RICO claim pursuant to 18 U.S.C. § 1962(c), a plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.  Sedima S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 496 (1985).  An "enterprise" includes "any individual, partnership, corporation,

association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). "Racketeering" is defined to include a variety of activities. The definition enumerates a number of federal statutory offenses, including three alleged here: extortion under the Hobbs Act, 18 U.S.C. § 1951, mail fraud under 18 U.S.C. § 1341, and wire fraud under 18 U.S.C. § 1343. See 18 U.S.C. 1961(1). It also defines as racketeering activity, as relevant here, "any act or threat involving [inter alia] . . . extortion . . . which is chargeable under State law and punishable by imprisonment for more than one year." Id. A "pattern" of racketeering activity is defined as "at least two acts of racketeering activity." 18 U.S.C. § 1961(5). To state a claim under 18 U.S.C. 1962(d), a plaintiff must allege a conspiracy to commit a substantive RICO violation pursuant to 18 U.S.C. § 1962(a), (b), or (c). See 18 U.S.C. § 1962(d).

The Defendants argue that the FAC fails to plead a RICO violation because, inter alia, it fails to allege fraud with particularity, fails to allege a pattern of racketeering activity with the requisite continuity, fails to allege any cognizable RICO injury, it fails to allege reliance on any fraudulent statement, and the filing of meritless litigation is not a RICO predicate act. The following discussion of each category of RICO predicates addresses three of these issues.

A.    Hobbs Act Extortion

The Hobbs Act defines extortion as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right."  18 U.S.C. § 1951.  FTB alleges that the Defendants filed frivolous lawsuits with the wrongful intent and effect of causing fear of economic loss.  Because the instigation of meritless litigation cannot constitute extortion under the Hobbs Act, any predicate acts premised on the Hobbs Act are stricken.

The courts of appeals which have addressed the question have all agreed that the instigation of meritless litigation does not establish the predicate RICO act of extortion.  See Deck v. Engineered Laminates, 349 F.3d 1253, 1258 (10th Cir. 2003) ("[w]e join a multitude of other courts in holding that meritless litigation is not extortion under § 1951"); United States v. Pendergraft, 297 F.3d 1198, 1205-08 (11th Cir. 2002); Vemco, Inc. v. Camardella, 23 F.3d 129, 134 (6th Cir. 1994); First Pac. Bancorp, Inc. v. Bro, 847 F.2d 542, 547 (9th Cir. 1988); I.S. Joseph Co., Inc. v. J. Lauritzen A/S, 751 F.2d 265, 267-68 (8th Cir. 1984).  While the Second Circuit has not yet addressed the question, district courts in this circuit have held that the filing of meritless litigation, or even malicious prosecution, is not a predicate RICO act.  See G-I Holdings, Inc. v. Baron &

10

Budd, 179 F. Supp. 2d 233, 259 (S.D.N.Y. 2001); Nakahara v. Bal, 97 CIV. 2027 (DLC), 1998 WL 35123, at *8 (S.D.N.Y. Jan. 30, 1998); von Bulow by Auersperg v. von Bulow, 657 F. Supp. 1134, 1143 (S.D.N.Y. 1987).

There are sound policy reasons against recognizing the instigation of meritless litigation as a RICO predicate act. Recognizing such litigation as a predicate RICO act would give complainants unprecedented access to federal courts and the treble damage remedy authorized under RICO.  Such a significant extension of RICO's reach is best made, if at all, by Congress. Moreover, allowing these suits to proceed as RICO suits risks chilling parties' resort to the judicial system to resolve their disputes.  See Deck, 349 F.3d at 1258.

The authority cited by FTB for the proposition that the instigation of meritless litigation can constitute the predicate RICO act of extortion under the Hobbs Act is inapposite.  FTB's sole Second Circuit authority for this proposition is United States v. Abelis, 146 F.3d 73 (2d Cir. 1998), which states that the wrongful use of fear under RICO does not require "implicit or explicit threats, but instead leaves open the cause of the fear." Id. at 83.  In Abelis, Russian criminal groups had attempted to extort the payment of millions of dollars.  Id. at 76.  The case is silent on the question of whether the instigation of meritless litigation can constitute the predicate act of extortion.  It

does not call into question the well-established caselaw to the contrary.

FTB also relies on Chevron Corp. v. Donzinger, 871 F. Supp. 2d 229 (S.D.N.Y. 2012), where the court held that a complaint alleging a wide ranging multi-faceted extortionate scheme that included malicious litigation pled extortion under the Hobbs Act. But the facts of the extortionate scheme in that case went far beyond the filing of meritless litigation.  Id. at 249.  The Chevron case involved intimidation of judges, fabrication of evidence, and bringing false criminal charges.  Id.  None of those elements are present here.  Moreover, the Chevron court expressly distinguished the facts of its case from cases in which only malicious or meritless litigation was at issue, stating that while "frivolous litigation and defamatory statements are not alone sufficient to constitute extortion . . . Chevron's amended complaint goes far beyond that."  Id.

FTB's Hobbs Act claim is not saved by its contention that Lumen's attorney threatened FTB's CEO with criminal charges for calling Shapiro a "patent troll."  Even if this allegation were sufficient to constitute a plausible claim of extortion under the Hobbs Act, FTB does not explain how a threat to pursue criminal charges for using the term "patent troll" constitutes an integral part of the Defendants' alleged pattern of racketeering activity, which is centered on filing meritless litigation.  See H.J. Inc.

12

v. Nw. Bell Tel. Co., 492 U.S. 229, 239 (1989)("to prove a
pattern of racketeering activity a plaintiff or prosecutor must
show that the racketeering predicates are related, and that they
amount to or pose a threat of continued criminal activity.").
FTB has not alleged that Lumen has made a practice of baiting
defendants into using the term patent troll and then threatening
them with criminal prosecution absent a settlement.

> B.   Mail Fraud & Wire Fraud

FTB also grounds its RICO claims on the predicate acts of
mail fraud and wire fraud.  Mail fraud occurs when a person
"having devised or intending to devise any scheme or artifice to
defraud," uses the mail "for the purpose of executing such scheme
or artifice or attempting so to do."  18 U.S.C. § 1341.  Wire
fraud occurs when a person "having devised or intending to devise
any scheme or artifice to defraud," "transmit[s] by means of
wire, radio, or television communication . . . any writings,
signs, signals, pictures, or sounds for the purpose of executing
such scheme or artifice."  18 U.S.C. § 1343.

To constitute a RICO predicate act, a pleading of wire fraud
or mail fraud must plausibly allege reliance on the
misrepresentations at issue.  Because a plaintiff must show that
he is "injured in his business or property by reason of" a
pattern of mail or wire fraud, reliance is an essential part of
demonstrating causation between a defendant's misrepresentations

and the plaintiff's injury.  18 U.S.C. § 1964(c) (emphasis

added).

> To show injury by reason of a RICO violation, a
> plaintiff must demonstrate that the violation caused
> his injury in two senses.  First, he must show that
> the RICO violation was the proximate cause of his
> injury, meaning there was a direct relationship
> between the plaintiff's injury and the defendant's
> injurious conduct.  Second, he must show that the
> RICO violation was the but-for (or transactional)
> cause of his injury, meaning that but for the RICO
> violation, he would not have been injured.

UFCW Local 1776 v. Eli Lilly & Co., 620 F.3d 121, 132 (2d Cir.

2010) (citation omitted).  "[I]njury must be caused by a pattern

of racketeering activity violating section 1962 or by individual

RICO predicate acts."  Hecht v. Commerce Clearing House, Inc.,

897 F.2d 21, 23 (2d Cir. 1990) (citation omitted).  In the

context of the predicate acts of mail and wire fraud, "proof of

misrepresentation -- even widespread and uniform

misrepresentation -- only satisfies half of the equation . . .

because plaintiffs must also demonstrate reliance on a

defendant's . . . misrepresentation to establish causation under

RICO."  In re U.S. Foodservice Inc. Pricing Litig., 729 F.3d 108,

119 (2d Cir. 2013) (citation omitted).  "In most cases, the

plaintiff will not be able to establish even but-for causation if

no one relied on the misrepresentation. . . .  In addition, the

complete absence of reliance may prevent the plaintiff from

establishing proximate cause."  Phoenix Bond & Indem. Co., 553

U.S. at 658-59.

14

FTB's complaint does not plausibly allege reliance on any of the Defendants' misrepresentations. FTB has not pled that it took any actions in reliance on any of the Defendants' purportedly false statements. To the contrary, FTB disputed from the outset that it was infringing the '073 Patent, and successfully litigated a motion to invalidate it. Moreover, FTB had no reason to rely on any of the Defendants' representations in evaluating whether they were infringing the patent.

FTB states in one conclusory paragraph in the FAC that "[t]he Defendants' false and misleading statements were relied on by FTB and have caused FTB substantial damages." But this bare allegation is insufficient under either Rule 8 or Rule 9(b), Fed. Civ. P., to survive a motion to dismiss. A court is not "bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678. Whether FTB relied on any of the Defendants' misrepresentations is information known to FTB, and there is no reason to accept FTB's naked assertion.

Because FTB has not plausibly pled reliance on the Defendants' alleged misrepresentations and its injury, it has not shown that its injuries were caused proximately by the RICO predicate acts of mail and wire fraud. Therefore, its RICO claims predicated on wire fraud and mail fraud fail.

FTB's relies on Terminate Control Corp. v. Horowitz, 28 F.3d 1335 (2d Cir. 1994), to argue that its injuries were proximately

15

caused by the Defendants' alleged mail and wire fraud.  That argument is unavailing.  The plaintiff in Horowitz provided maintenance and repair services for New York City school buildings.  When it refused to pay kickbacks that had been solicited by the defendants in connection with building maintenance and repair contracts, payment due under ongoing contracts was withheld and the plaintiff was not awarded other contract work.  These retaliatory acts were "foreseen and anticipated" results from the plaintiff's refusal to succumb to the attempted extortion.  Id. at 1346.  The court reasoned that these injuries were proximately caused by the conspiracy to extort, given that the retaliatory acts were in furtherance of that conspiracy.  Id.  Here, however, FTB has not adequately pled the predicate acts of mail and wire fraud.  FTB's injuries cannot have been proximately caused by predicate RICO violations that did not occur.

FTB's contention that Phoenix Bond & Indem. Co., stands for the proposition that it does not have to show reliance on the alleged misrepresentations to sustain a mail or wire fraud claim is incorrect.  553 U.S. at 658-59.  In Phoenix Bond, the Supreme Court held that a third party's reliance on a defendant's fraudulent representation can suffice to establish the requisite causation between that representation and a first party's injury.  See id. at 648.  The Court cautioned that "none of this is to say

that a RICO plaintiff who alleges injury 'by reason of' a pattern of mail fraud can prevail without showing that someone relied on the Defendant's misrepresentations." Id. at 658.  Here, FTB has not shown that any party's reliance on Lumen's alleged misrepresentations caused it injury.

The Defendants also contend that litigation activities cannot support claims of mail fraud and wire fraud as predicate acts under RICO.  FTB does not respond to this assertion.  But courts have consistently refused to recognize as wire or mail fraud even litigation activities that rise to the level of malicious prosecution simply because the mail or wires were used. See, e.g., Curtis & Associates, P.C. v. Law Offices of David M. Bushman, Esq., 758 F. Supp. 2d 153, 172 (E.D.N.Y. 2010); Bal, 1998 WL 35123, at *8; von Bulow, 657 F. Supp. at 1143.  This provides an additional reason to dismiss the RICO claims in the FAC.

C.   Travel Act

FTB also alleges that the Defendants' conduct violates the Travel Act, 18 U.S.C. § 1952.  The Travel Act makes it a crime to travel between states with the intent to commit specified crimes listed in the statute, or to use the mail to commit those crimes. See 18 U.S.C. § 1952(a).  The crimes which FTB alleges the Defendants committed in violation of the Travel Act mirror the extortion, mail fraud, and wire fraud claims addressed above.

17

Because FTB has failed to state a claim for a violation of those predicate acts, FTB's Travel Act claim fails as well.

      D.   <u>Extortion Under California Law</u>

     Finally, FTB pleads extortion in violation of California State Penal Law §§ 518 <u>et seq</u>. as a predicate RICO act.  That statute defines extortion as "the obtaining of property from another, with his consent, or the obtaining of an official act of a public officer, induced by a wrongful use of force or fear, or under color of official right."  Cal. Penal Code § 518.  Threats sufficient to induce "fear," include, <u>inter alia</u>, threats "[t]o do an unlawful injury to the person or property of the individual threatened or of a third person."  <u>Id.</u>  The Defendants concede that a threat of litigation can constitute an "unlawful injury to . . . property" under California law if it is objectively baseless.  <u>See</u> <u>In re Nichols</u>, 82 Cal. App. 73, 76, 255 P. 244 (1927); <u>see also</u> <u>Sosa v. DIRECTV, Inc.</u>, 437 F.3d 923, 940 (9th Cir. 2006) ("extortion predicated on threat to sue requires allegation that threatened suit was objectively baseless" (citation omitted)).

     It is unnecessary to determine whether the FAC has adequately pleaded that the Defendants' patent infringement lawsuit against FTB was "objectively baseless," or otherwise constituted extortion under California law, because FTB has not plausibly pled that California law applies to any of the other

18

allegedly extortionate lawsuits cited in FTB's FAC.  A RICO action requires a "pattern" of racketeering activity.  18 U.S.C. 1962(c); see Sedima, 473 U.S. 479, 497 (1985) ("two acts are necessary," though not necessarily sufficient, to "form a pattern" under RICO).  As described above, none of FTB's federal law claims state a claim for a predicate RICO act.  As a result, FTB's RICO claim fails even if it states a single claim for extortion under California law.

There is an additional hurdle that prevents FTB from relying on the California extortion statute to plead a RICO claim.  The very policy reasons that have led courts to dismiss RICO claims premised on an abuse of process, whether the predicate acts are pleaded as violations of the Hobbs Act or of the federal mail and wire fraud statutes, have as much force when those predicate acts invoke state extortion statutes.  As observed by the Tenth Circuit, "litigation can induce fear in a defendant; and it would be fair, . . .  to characterize as wrongful the filing of a groundless lawsuit."  Deck, 349 F.3d at 1258 (citation omitted).  Nonetheless, "recognizing abusive litigation as a form of extortion would subject almost any unsuccessful lawsuit to a colorable extortion . . . claim."  Id. (addressing Hobbs Act predicate for RICO claim).  Consequently, for this reason as well, the RICO claim fails.

II.  Conspiracy to Violate the RICO Statute

FTB's FAC also contains a count of conspiracy to violate RICO, in violation of 18 U.S.C. § 1962(d).  FTB's conspiracy claim is predicated on the wire fraud, mail fraud, and extortion theories described above.  Because FTB has not adequately pled a RICO claim under those theories, FTB's conspiracy claim fails as well.

III. Supplemental Jurisdiction

FTB also pleads four state law tort claims.  A federal district court's supplemental jurisdiction over state law claims is governed by 28 U.S.C. § 1367.  Under that provision, a district court "may decline to exercise supplemental jurisdiction over a claim" if, inter alia, "the district court has dismissed all claims over which it has original jurisdiction.  28 U.S.C. § 1367(c)(3).  "In deciding whether to exercise jurisdiction over supplemental state law claims, district courts should balance the values of judicial economy, convenience, fairness, and comity -- the 'Cohill factors.'"  Klein & Co. Futures, Inc. v. Bd. of Trade of City of New York, 464 F.3d 255, 262 (2d Cir. 2006) (citing Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)).  "It is well settled that where . . . the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining

state law claims." <u>Klein & Co. Futures</u>, 464 F.3d at 262.

> It is well to recall that in the usual case in which
> all federal-law claims are eliminated before trial,
> the balance of factors to be considered under the
> pendant jurisdiction doctrine -- judicial economy,
> convenience, fairness, and comity -- will point
> toward declining to exercise jurisdiction over the
> remaining state-law claims.

<u>Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med.</u>

<u>Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.</u>, 712 F.3d

705, 727 (2d Cir. 2013).

The federal claims having been dismissed, this Court

declines to exercise supplemental jurisdiction over FTB's state

law claims.  This litigation is at an early stage; discovery has

not yet commenced, and principles of judicial economy do not

counsel in favor of the exercise of jurisdiction.  FTB is a

California company and there is no reason why convenience favors

resolution of its state law claims in New York federal court.

And issues of fairness and comity do not weigh in either

direction.

IV.  <u>Leave to Amend</u>

In a footnote, FTB seeks leave to amend to include

additional facts supporting its claims in the event that the

Court finds the FAC deficient in some manner.  Rule 15(a)(2),

Fed. R. Civ. P., provides that "a party may amend its pleading

only with the opposing party's written consent or the court's

leave" and instructs that "[t]he court should freely give leave when justice so requires." "[I]t is within the sound discretion of the district court to grant or deny leave to amend." Green v. Mattingly, 585 F.3d 97, 104 (2d Cir. 2009) (citation omitted).  A motion for leave to amend may be denied for "good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." Holmes v. Grubman, 568 F.3d 329, 334 (2d Cir. 2009) (citation omitted).  In particular, "[w]here it appears that granting leave to amend is unlikely to be productive, however, it is not an abuse of discretion to deny leave to amend." Lucente v. Int'l Bus. Mach. Corp., 310 F.3d 243, 258 (2d Cir. 2002) (citation omitted).

FTB's request to amend is denied.  FTB has already amended its complaint once in response to the prior motions to dismiss. It does not explain how a further amendment would be productive. It does not identify what additional facts it would like to add or supply a proposed amended pleading.  Moreover, the core theory of the complaint is deficient from a legal perspective and FTB has made no effort to explain how any amendment could cure that defect.

CONCLUSION

The Defendants' December 16 and December 23 motions to dismiss are granted.  The Clerk of Court shall close the case.


SO ORDERED:

Dated:     New York, New York
           May 19, 2014

_____
                DENISE COTE
        United States District Judge